# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK CARTER,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2015

No.  317812
Wayne Circuit Court
LC No.  12-005075-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK CARTER,

        Defendant-Appellant.

No.  317828
Wayne Circuit Court
LC No.  12-000953-FC

---

Before:  GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant was charged with sexual offenses in four different cases, two of which were consolidated for trial.[1]  In LC No. 12-005075-FC, a jury convicted defendant of one count of kidnapping, MCL 750.349, and three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c), for an offense involving victim CM on January 5, 2012.  In LC No. 12-000953-FC, the jury convicted defendant of three counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b), for an offense involving victim RB on December 21, 2011.  The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 37-1/2 to 75 years' imprisonment each for the kidnapping and first-degree CSC convictions, and

---

[1] The other two cases were later dismissed.

-1-

10 to 15 years' imprisonment for each third-degree CSC conviction. Defendant appeals as of right, and we affirm.

## I. BACKGROUND

The cases involving victims CM and RB were two of four cases in which defendant was charged with committing criminal sexual conduct (CSC) in December 2011 and January 2012. Although the trial court initially consolidated all four cases, only the cases involving CM and RB proceeded to trial.

Victim RB testified that she was involved in prostitution to acquire money to support her addiction to crack cocaine, but denied working as a prostitute on December 21, 2011, when she encountered defendant at a gas station while waiting for a bus. RB testified that defendant used a knife or sharp object to force her inside a U-Haul truck that he was driving. She admitted, however, that she thereafter voluntarily accepted defendant's invitation to participate in drug use together, and that she twice voluntarily accompanied defendant to an abandoned house for this purpose. RB testified that, during the second visit, defendant demanded that she remove her clothing, which she refused to do. Defendant thereafter forcibly engaged in various sexual acts with her, without consent. After defendant left, RB left the house and collapsed in the street. Two girls took her to a restaurant where the police were contacted. RB was transported to a hospital where a forensic examination was conducted. Vaginal swabs taken from RB contained a DNA mixture that matched defendant's DNA profile.

CM could not be located for trial, so her preliminary examination testimony was read into the record. According to that testimony, CM was also supporting a crack cocaine habit through prostitution in January 2012. She voluntarily entered a U-Haul truck driven by defendant and engaged in oral sex with him in exchange for crack cocaine. However, she became uncomfortable when defendant drove outside the area she normally works. She tried to leave while defendant was parked in the driveway at a vacant house, but defendant grabbed her and drove to another driveway. CM testified that defendant then made her engage in sexual acts with him for several hours without her consent. Defendant later let CM out of the vehicle at a gas station, where she contacted the police. After trial, defendant was convicted and subsequently sentenced, and now appeals.

## II. JOINDER

Defendant argues that the trial court erred in joining the two cases for trial pursuant to MCR 6.120. We disagree. Whether joinder is permissible under MCR 6.120 is a mixed question of fact and law. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The trial court must first determine the relevant facts, which are reviewed for clear error. *Id.* The trial court "then must decide whether those facts constitute 'related' offenses for which joinder is appropriate," which is a question of law reviewed de novo *Id.* If joinder is permissible, the trial court then has discretion whether to join or sever the charges for trial. *People v Breidenbach*, 489 Mich 1, 14; 798 NW2d 738 (2011); *Williams*, 483 Mich at 234 n 6. "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

MCR 6.120 allows two or more informations against a single defendant to be consolidated at a single trial. However, MCR 6.120(C) provides that "[o]n the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1)." Subrule (B)(1) provides, in pertinent part:

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

We conclude that joinder was appropriate because the cases involving RB and CM involved a series of acts constituting parts of a single scheme or plan and, therefore, the cases were related under MCR 6.120(B)(1)(c). The evidence in the two cases indicates that defendant targeted vulnerable women on the street, invited them to participate in drug use, and then transported them to an isolated location for the purpose of engaging in sexual acts, regardless of their consent. Approximately two weeks separated the December 21, 2011 offense involving RB and the January 5, 2012 offense involving CM.[2] The circumstances under which defendant picked up the two women differed in some respects, because CM testified that she entered defendant's truck voluntarily, whereas RB testified that she did not enter the truck willingly. And while both women were prostitutes, RB testified that she was not working as a prostitute at the time she encountered defendant. However, in both cases, the women were also drug addicts, and defendant exploited this vulnerability by supplying the women with drugs. Defendant also drove both women to unfamiliar places. CM testified that when she refused to go to a house with defendant and tried to leave, he overpowered her. RB testified that she voluntarily went to an abandoned house with defendant to smoke crack cocaine, but that defendant then overpowered her inside the house and forced her to engage in sexual activities. Considering the similarities of the two offenses, we conclude that the two offenses were related under MCR 6.120(B)(1)(c). Therefore, joinder was permissible, and the trial court had discretion to join the two cases for trial. *Breidenbach*, 489 Mich at 14.

---

[2] We note that although the incidents did not occur on the same date or time, as defendant points out, the offenses need not have temporal proximity. *Williams*, 483 Mich at 241 n 18.

Further, we agree with the trial court that considerations of judicial economy favored joining the two cases for trial. Additionally, the prosecution timely filed its motion for joinder, and the facts in the cases were not complex and presented little potential for confusion.

With respect to the potential for prejudice, a relevant consideration is whether evidence of one charged offense would be admissible at a separate trial for the other charged offense. *Williams*, 483 Mich at 237. Thus, we agree that the trial court incorrectly found that its joinder decision made it unnecessary to address the admissibility of the victims' testimony pursuant to MRE 404(b). However, despite this error, pursuant to the discussion above, both victims' testimonies would have been admissible at each trial to show defendant's common plan or scheme. See *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000), and *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002). Further, we disagree with defendant's cursory argument that the other-acts evidence should have been excluded pursuant to MRE 403 because the evidence was more prejudicial than probative. Thus, after considering all relevant factors, the trial court's joinder decision was within the range of principled outcomes. See *Lacalamita*, 286 Mich App at 469. Accordingly, the trial court did not abuse its discretion in joining the two cases for trial.

Defendant argues in a supplemental Standard 4 brief that joinder was improper because no formal order consolidating the cases was ever entered. We disagree. An oral ruling can have the same effect as a written order where it clearly communicates the finality of the pronouncement. *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 387-388; 853 NW2d 421 (2014); see also *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996). The trial court's joinder decision had sufficient indicia of finality to be given effect. Moreover, the trial court's orders denying defendant's motion for separate trials and denying reconsideration of the joinder decision further embody the trial court's pretrial decision to permit consolidation. Defendant's other arguments in his Standard 4 brief relating to the joinder of trials were reviewed, and lack merit as he has failed to establish that the trial court abused its discretion in joining the cases.

III. CM'S PRELIMINARY EXAMINATION TESTIMONY

Defendant next argues that the trial court erred in reading CM's preliminary examination testimony into the record at trial because the prosecution failed to exercise due diligence to procure CM's presence at trial. We disagree.

We review a trial court's decision to admit evidence at trial for an abuse of discretion. *People v Jackson*, 292 Mich App 583, 594; 808 NW2d 541 (2011). A trial court's determination whether the prosecution exercised due diligence to locate a witness for trial is also reviewed for an abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

MRE 804(b)(1) provides that former testimony of a witness is not excluded by the hearsay rule if the witness is unavailable and the party against whom the testimony is offered "had an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination." A witness is unavailable under MRE 804(a)(5) if the person is absent from the hearing and the proponent has been unable to procure the person's attendance and, in a criminal case, due diligence is shown. In *Bean*, 457 Mich at 684, our Supreme Court explained:

The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it.

At a due diligence hearing, Detroit Police Officer Jose Ortiz, the officer in charge of the cases, testified regarding the efforts to locate and produce CM for trial. Although Officer Ortiz did not maintain contact with CM throughout the 13-month period between the preliminary examination and trial, he testified that he had telephone contact with CM in connection with adjourned trial dates up to November 2012. His testimony does not indicate that the police had any reason to believe that they would be unable to locate CM. Officer Ortiz described his efforts to contact and locate CM beginning on June 25, 2013, which was more than two weeks before the start of trial. He attempted to contact CM by telephone, visited CM's last known address, searched other areas frequented by CM, and made contact with her aunt and other acquaintances. Officer Ortiz testified that he was told by CM's aunt that she had not seen CM for weeks, and other individuals similarly reported that they had not seen CM for a couple of weeks. Other investigators also attempted to find CM by contacting hospitals, the morgue, and by checking VINELINK to determine whether she was incarcerated. Defendant contends that CM's "lifestyle" required the prosecution to take additional measures to maintain contact, but we remain unconvinced of defendant's unsupported statement that CM's "lifestyle" somehow makes her unquestionably more difficult to reach than any other witness.

In *People James (After Remand)*, 192 Mich App 568, 571-572; 481 NW2d 715 (1992), this Court determined that any good faith that could be afforded to a prosecutor in attempting to locate a witness was undermined by the prosecutor's lack of contact with the witness for almost 3-1/2 years between the preliminary examination and the first day of the trial. This Court determined that "the passing of so long a period of time should place any reasonable prosecutor on notice that a witness may have changed residences or otherwise be difficult to locate." *Id.* at 572. But in *People v Watkins*, 209 Mich App 1, 4; 530 NW2d 111 (1995), this Court upheld a trial court's finding of due diligence where four years had passed between the defendant's first trial and the reversal of his convictions, efforts to locate the witness began at least a month before the defendant's retrial, and there was no indication of any problem in producing the witness for the first trial.

Here, we reject defendant's argument that the failure to maintain contact with CM between November 2012 and June 25, 2013, precluded a finding of due diligence. Considering the particular facts and circumstances of the case, the trial court did not abuse its discretion in determining that the prosecution exercised due diligence in attempting to locate CM. The delay between the preliminary examination and trial was approximately 13 months, but there had been intervening contact with CM in connection with adjourned trial dates, there was no indication of any past problem contacting or producing CM for earlier proceedings, and Officer Ortiz began his efforts to locate CM more than two weeks before trial began. The efforts to locate and produce CM for trial were reasonable under the circumstances.

Defendant also notes that he had a constitutional right to confront and question the witnesses against him. We agree, but that right was protected by affording defendant an opportunity to cross-examine CM at the preliminary examination. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

We have also considered the additional arguments raised by defendant in his Standard 4 brief. We reject defendant's argument that an address for CM on the prosecution's amended witness list raised a question whether due diligence was exercised in trying to locate CM. First, we note that Officer Ortiz was not questioned about that address at the due diligence hearing. Moreover, CM identified a different address in her preliminary examination testimony and Officer Ortiz investigated that address. He was told that CM had not been seen there for a couple of weeks, not that she did not live there. We also reject defendant's argument that the prosecutor had an obligation to house CM at a shelter before trial to ensure contact.

## IV. PSYCHOLOGICAL RECORDS

Defendant next argues that he is entitled to a new trial because the prosecution failed to comply with a discovery order to produce RB's psychological records for an in camera inspection by the trial court. We disagree.

We review a trial court's decision regarding an appropriate remedy for a discovery violation for an abuse of discretion. *Jackson*, 292 Mich App at 591. Any factual findings by the trial court are reviewed for clear error. *People v Tracey*, 221 Mich App 321, 323; 561 NW2d 133 (1997). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

About three weeks before trial, the court heard defendant's motion to obtain RB's psychological records. Defendant claimed that, based on RB's preliminary examination testimony, she suffered from bipolar disorder, which impacted her perception of the alleged offense. The trial court granted the motion, in part, and ordered the prosecution to obtain the emergency room (ER) records for RB from the night of the incident along with her psychological records for an in camera review by the trial court. The prosecutor produced the ER records for RB, but no additional psychological records. During cross-examination, it was revealed that RB was regularly treated by a psychiatrist. Defendant moved for an adjournment or dismissal based on the prosecutor's failure to provide the records, and the court denied his request. On appeal, defendant asserts that the trial court abused its discretion by failing to order an appropriate remedy for the prosecution's discovery violation.

"When determining an appropriate remedy for a discovery violation, the trial court must balance the interests of the courts, the public, and the parties in light of the relevant circumstances." *Jackson*, 292 Mich App at 592. Here, the only remedies requested by defendant were an adjournment or mistrial, and we conclude that the trial court did not abuse its discretion in denying those requests. Although the trial court ordered that the prosecutor subpoena RB's psychological records for an in camera inspection, there were no known or specific records identified at the hearing for the prosecutor to subpoena, other than RB's ER records. The prosecutor agreed to use her best efforts to obtain any records that existed. On the first day of

trial, the prosecutor informed the court that she did not have sufficient information to locate and subpoena any psychological records. She had obtained the ER records for RB, and while the records mentioned RB's bipolar disorder, no specific treatment information was included. The prosecutor explained that she had informed defense counsel of her lack of information the week before trial, and that she had spoken to RB that morning and did not have any additional information at that time. Defendant did not challenge the representations made by the prosecutor. After it was revealed on cross-examination that RB was treated by a psychiatrist, defendant moved for a mistrial. The prosecutor stated that she did not know the information beforehand and that she had not been able to have regular or reliable communication with RB. The trial court found that the prosecutor did not know about the psychological records and, thus, declined to adjourn trial or declare a mistrial. We find no clear error in the trial court's finding that the prosecutor was unaware of RB's ongoing treatment. The trial court's finding is supported by the record, and we are not left "with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. Thus, the trial court did not abuse its discretion in denying defendant's requests for discovery sanctions.

Further, we agree with the prosecution's argument on appeal that defendant did not justify a need for an in camera inspection because he did not demonstrate a good-faith belief, grounded in articulable fact, that the records may contain materials necessary to his defense. MCR 6.201(C)(2); *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994). Without a specific discovery request, defendant is simply on a fishing expedition, which is inappropriate. *Stanaway*, 446 Mich at 680-681. Here, defendant did not demonstrate a reasonable probability that any privileged record existed that would support the defense theory that RB misperceived the forcible nature of the sexual acts and, more specifically, that she had a mental condition that caused her to incorrectly perceive that she was not consensually engaging in sexual acts in exchange for drugs. Defendant alleged vaguely that the psychological records were "relevant to the issue of [the c]omplaining [w]itnesses' perceptions of the sexual encounters that occurred with [d]efendant both during and after the sexual encounters occurred," and whether "her mental illness played a part in her contradicting story… in terms of her assessment of what occurred or what did not occur." In his requests for the records, defendant made no specific allegation how RB's bipolar disorder affected RB's perception of whether she engaged in consensual or nonconsensual sex with defendant. Under defendant's theory, the existence of any mental illness would be discoverable by the defense, which distorts the articulated standard and qualifies as a fishing expedition. Further, there are a number of factors, such as drug use, which was also present in this case, that may affect a person's perception. See *People v Anderson*, 389 Mich 155, 213; 205 NW2d 461 (1973), overruled on other grounds in *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004).

Having considered defendant's claims in his pretrial motion and at trial, we conclude that defendant provided insufficient, articulable facts to warrant an in camera inspection of privileged records. See MCR 6.201(C)(2); *People v Stanaway*, 446 Mich at 677. Therefore, defendant has not established any basis for relief at trial in response to RB's disclosure of her psychiatric care. This Court will not disturb a trial court's decision when the right result was reached, even if for a wrong reason. *People v Carruthers*, 301 Mich App 590, 611; 837 NW2d 16 (2013).

Defendant's additional arguments in his Standard 4 brief also fail to establish any basis for relief.[3]  Defendant's reliance on a prosecutor's due-process duty to disclose exculpatory and material evidence under *United States v Agurs*, 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976), is misplaced because that duty is implicated only where the prosecutor possesses the evidence.  See *Jackson*, 292 Mich App at 590.  Defendant also raises several additional arguments and considerations relevant to the production of RB's psychological records, none of which were raised before the trial court.  First, defendant suggests that the prosecutor should have discovered RB's psychological records based on information in the medical records that were produced at trial.  Second, defendant argues that RB's preliminary examination testimony that she was "on disability" gave rise to a duty by the prosecutor to investigate whether any psychological records could be obtained from the Social Security Administration.  Third, defendant asserts that he needed information regarding RB's seizure disorder and risk of falling, which were mentioned in the medical records provided by the prosecutor.  After reviewing these arguments, we are not convinced that information referenced by defendant provided the prosecution information necessary to obtain psychological records pursuant to the court's discovery order.  Fourth, defendant attempts to expand on the reasons presented to the trial court for seeking RB's psychological records, relying on information in a medical record that RB had a history of schizophrenia and took antipsychotic medication.  However, consistent with our above analysis, defendant failed to provide sufficient, articulable facts in the trial court to justify an in camera inspection of psychological records, which is dispositive of his claim of error.  Thus, defendant's arguments in his Standard 4 brief lack merit.

With respect to the CM case, we similarly conclude that defendant failed to provide sufficient, articulable facts to justify an in camera inspection of any psychological records.  Unlike with the RB case, defendant did not argue at trial that he should be granted any relief based on the prosecutor's failure to identify and produce any psychological records and, thus, the issue is unpreserved.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  We review unpreserved claims for clear error.  *Id*.

Defendant's assertion that CM had counseling records that could have been obtained from the Department of Corrections does not provide a basis for relief.  A defendant has the burden of "furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated."  *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).  But expansion of the record on appeal is generally not permitted, *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999), although this Court has discretion to permit additions to the record at any time.  MCR 7.216(A)(4); *People v Nash*, 244 Mich App 93, 99; 625 NW2d 87 (2000).  Defendant's reliance on a document dated June 28, 2013, from a "LocatePLUS" Internet website is not properly before this Court because it is not part of the record on appeal in the CM case.  Even if the document is considered, it does not support an inference that there were counseling records available from the Department of Corrections, let

---

[3] To the extent that any of defendant's allegations in his standard 4 brief are not specifically addressed by this Court, we note that all arguments were reviewed and found to lack merit.

alone establish that the prosecutor had a duty to identify and produce any records for an in camera inspection before trial. Therefore, we find no basis for relief.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. All of defendant's arguments were reviewed and found to lack merit.

## A. PSYCHOLOGICAL EXPERT

Defendant argues that the trial court erred in denying his pretrial motion for appointment of an expert to conduct psychological examinations of CM and RB. We disagree. A trial court's decision regarding whether to grant an indigent defendant's motion for the appointment of an expert is reviewed for an abuse of discretion. *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003); MCL 775.15. An abuse of discretion occurs when a trial court selects an outcome that is not within the range of reasonable and principled outcomes. *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006).

Pursuant to MCL 775.15, a trial court may appoint an expert witness for an indigent defendant if the trial court determines that the defendant "cannot safely proceed to a trial" without the witness's testimony. MCL 775.15; *Carnicom*, 272 Mich App at 617. "A trial court is not compelled to provide funds for the appointment of an expert on demand." *Carnicom*, 272 Mich App at 617. "To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Id*. "It is not enough for the defendant to show a mere possibility of assistance from the requested expert." *Id*. Additionally, the defendant must show that the expert testimony would likely benefit the defense. *Tanner*, 469 Mich at 443.

There must be a compelling reason for a court to order a psychological evaluation of a complainant in a CSC case. *People v Graham*, 173 Mich App 473, 478; 434 NW2d 165 (1988); *People v Payne*, 90 Mich App 713, 723; 282 NW2d 456 (1979). A concern in a case where the defendant desires a psychological evaluation to examine the veracity of the complainant is that the psychological evaluation might invade the province of the trier of fact. *Graham*, 173 Mich App at 478. "It is well established that an expert may not render an opinion or assessment as to the veracity of a complaining witness in a criminal sexual conduct case." *Id*.

We conclude that the trial court did not abuse its discretion by not compelling CM and RB to submit to psychological evaluations without first inspecting any psychological records. As discussed previously, defendant did not even make the requisite good-faith showing, grounded in articulable fact, that an in camera inspection of psychological records was warranted. Defendant's request for psychological evaluations of CM and RB shortly before trial, based on their preliminary examination testimony, is even less compelling, particularly considering that the particular evaluations sought by defendant regarding the complainants' perceptions relate directly to credibility and would have invaded the province of the jury.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also seeks a new trial or remand for a *Ginther*[4] hearing based on numerous claims of ineffective assistance of counsel. To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not file a motion for a new trial or an evidentiary hearing in the trial court. Therefore, "this Court's review is limited to mistakes apparent from the record." *Id*. However, we consider the additional materials submitted with defendant's Standard 4 brief for the limited purpose of determining whether they demonstrate that remand for a *Ginther* hearing is justified. See MCR 7.211(C)(1)(a); *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich at 289-290. "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defendant first complains that defense counsel failed to communicate with a defense investigator. A defendant is entitled to have defense counsel prepare, investigate, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (citation omitted). Defendant cites no record evidence to support his claim that there was no communication with an investigator. Further, he does not identify any information or evidence that was discovered by an investigator that was not presented at trial. See *Heft*, 299 Mich App at 80. Accordingly, defendant has also failed to establish any factual basis for concluding that counsel's performance fell below an objective standard of reasonableness or caused him prejudice. See *Nix*, 301 Mich App at 207. Similarly, defendant's claim that defense counsel was ineffective for failing to investigate or call res gestae witnesses who could allegedly corroborate the defense theory similarly fails because it lacks record support and because defendant did not identify any alleged witnesses or explain what testimony they could have provided. See *Heft*, 299 Mich App at 80; *Nix*, 301 Mich App at 207.

The record further fails to support defendant's claim that defense counsel failed to investigate whether there were work tools inside the U-Haul truck at the time of defendant's arrest. Defendant asserts that it was crucial to his defense to show the jury the tools in order to contradict CM's testimony that she was scared by the tools in the truck during the alleged offense. According to defendant, production of the tools would prove that "no person in [their] right mind would fear [the] items." We do not agree that defense counsel's failure to admit the tools at trial, or a picture of the tools, fell below an objective standard of reasonableness. CM described the tools in her testimony as types of items used for scrapping activities. Defendant

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

does not dispute this description, or the presence of tools in the truck. Further, the tools seized by the police were obtained three days after the offense against CM, so the evidence would not conclusively show the tools that were in the truck during the alleged assault against CM. Therefore, we do not agree that this lack of evidence deprived defendant of a substantial defense. See *Chapo*, 283 Mich App at 371. Indeed, showing the tools to the jury could have corroborated CM's preliminary examination testimony and, accordingly, harmed the defense theory that CM was not credible.

We also reject defendant's argument that defense counsel was ineffective for not investigating or admitting evidence of the clothing worn by CM and RB at the time of the offenses. At trial, there was record evidence regarding what the victims were wearing and the condition of their clothing. Defendant has not established that admitting the physical clothing would have provided him with a substantial defense or made a difference in the outcome of trial. See *id.*; *Nix*, 301 Mich App at 207. Further, there is no record support for defendant's claim that video evidence existed in the RB case that could have aided him in establishing a substantial defense to the charges. See *Heft*, 299 Mich App at 80.

We also reject defendant's claim that counsel was ineffective for not investigating a police report prepared by Detroit Police Officer Michelle Strong. Defendant claims that had defense counsel investigated the report, he would have been able to cross-exam Strong regarding a police conspiracy to have him arrested on false CSC allegations. Defendant's assertions regarding defense counsel's motives in not cross-examining Strong further and his claim that the additional cross-examination of Strong would somehow have uncovered a police conspiracy against defendant are purely speculative and not based on record evidence. See *id*. Thus, defendant has failed to establish anything about Officer Strong's investigation or report that could have provided him with a substantial defense.

Defendant also argues that defense counsel was ineffective for failing to move to suppress statements made following defendant's arrest. In making his argument, defendant does not address any grounds for objecting to the statement, but only asserts that the statement formed the basis for the trial court giving the jury a flight instruction. Defense counsel is not ineffective for failing to make a futile objection, and defendant has not identified a basis for excluding the testimony. *People v Crews*, 299 Mich App 381, 401; 829 NW2d 898 (2013). Moreover, we disagree with defendant's assertion that his statement was hearsay. Because the statement was offered against defendant, it was admissible under MRE 801(d)(2)(A).

We also reject any suggestion that defendant's post-arrest statement was subject to suppression as the product of an illegal arrest because there was no probable cause to arrest defendant. "A police officer may arrest a person without a warrant if he or she has reasonable cause to believe that a felony has been committed and that the particular person committed it." *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011). Where a police officer makes a warrantless arrest without probable cause, the exclusionary rule requires suppression of any evidence procured as a result of the unlawful detention. *People v Kelly*, 231 Mich App 627, 634; 588 NW2d 480 (1998). The record indicates that the police investigated a number of suspects before defendant was arrested, but were able to rule out those suspects. The investigation led to information linking a particular U-Haul truck to the offenses, and further investigation linked that U-Haul truck to defendant. Officer Strong indicated that when she located the truck on

-11-

January 8, 2012, defendant took off in the truck at a high rate of speed. Considering the trial and preliminary examination record, defendant has not demonstrated that defense counsel had a meritorious basis for challenging the legality of defendant's arrest. Defense counsel is not ineffective for failure to advocate a meritless position. *People v Payne*, 285 Mich App 181, 191; 774 NW2d 714 (2009). Thus, there was no basis for seeking suppression of defendant's post-arrest statement. For the same reasons, we further reject defendant's additional arguments regarding the suppression of evidence obtained as a result of his arrest.

Defendant also argues that defense counsel was ineffective for not requesting a jury instruction on unlawful imprisonment in the CM case, as a lesser offense to the kidnapping charge. We disagree. A trial court may instruct a jury on a lesser offense only if the offense is a necessarily included lesser offense of a charged greater offense. MCL 768.32(1); *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007). In 2006, the Legislature amended the kidnapping statute, MCL 750.349, to add MCL 750.349b, differentiating unlawful imprisonment from kidnapping. *People v Kosik*, 303 Mich App 146, 158; 841 NW2d 906 (2013). The kidnapping statute, MCL 750.349(1), requires that a person knowingly restrain another person with one or more listed intents, such as to engage in criminal sexual penetration. MCL 750.349(2) defines "restrain" to mean "to restrict a person's movements or to confine the person so as to interfere with the person's liberty without the person's consent or without legal authority." The unlawful imprisonment statute, MCL 750.349b(1), also requires knowing restraint, but specifies circumstances, such as "restrained to facilitate the commission of another felony," as additional elements of the offense. It defines "restrain" to require the use of force. See MCL 750.349(b)(3)(a). Although these offenses share elements, unlawful imprisonment is not subsumed within the elements necessary to commit kidnapping and, thus, not a necessarily included lesser offense to kidnapping. Therefore, defendant was not entitled to a jury instruction on unlawful imprisonment, and counsel cannot be deemed ineffective for not requesting the instruction. Counsel need not make a futile request. *Crews*, 299 Mich App at 401.

Defendant also argues that counsel was ineffective for failing to request a jury instruction for assault with intent to commit CSC involving sexual penetration, MCL 750.520g(1), in the RB case. Defendant argues that the instruction was warranted because RB testified that defendant hit her in the face. Because the "force or coercion" element of third-degree CSC, MCL 750.520d(1)(b), would necessarily contemplate a situation where an assault occurs, we agree with defendant that assault with intent to commit CSC would qualify as a necessarily included lesser offense of third-degree CSC. See *People v Nickens*, 470 Mich 622, 630; 685 NW2d 657 (2004). However, instruction on a necessarily included lesser offense is warranted only if the instruction is supported by a rational view of the evidence. *Smith*, 478 Mich at 69. The element that distinguishes the two offenses is a completed act of sexual penetration. In this case, RB testified regarding completed acts of penetration. The defense did not contest that defendant engaged in the sexual activity, but claimed that the activity was consensual. The defense argued that RB's testimony about being hit in the face to accomplish the sexual acts was not credible. Because a rational view of the evidence did not support that defendant assaulted RB with the intent to engage in sexual penetration, but failed to complete the sexual acts, defendant was not entitled to an instruction on assault with intent to commit CSC involving sexual penetration. Furthermore, defense counsel had a legitimate strategy reason for not requesting the instruction because it would have been contrary to the defense theory that the sexual activity was consensual

and that RB's testimony about an assault was not credible. Thus, defendant has not overcome the strong presumption of sound trial strategy. *Payne*, 285 Mich App at 190.

Defendant also argues that defense counsel was ineffective for not requesting the consent instruction in former CJI2d 20.27, or the definition of sufficient force in former CJI2d 20.24.[5] Consent is a defense to CSC charges insofar that it negates the elements of force or coercion. *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006). In the CM case, defendant was convicted of first-degree CSC, MCL 750.520b(1)(c), under the circumstances of kidnapping, MCL 750.349. Consent is not a defense to a charge under MCL 750.520b(1)(c) unless it is a defense to the underlying felony. *People v Wilkens*, 267 Mich App 728, 737; 705 NW2d 728 (2005). Defendant has not established any instructional error that could support his claim of ineffective assistance of counsel because the trial court instructed the jury, consistent with the "restrain" definition in MCL 750.349(2), that the restraint must be without the person's consent. There is no instructional error if the jury instructions fairly present the issues to be tried and sufficiently protect the defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001). Because the trial court gave a jury instruction that addressed the lack of consent pertinent to the first-degree CSC charges, and the consent instruction in CJI2d 20.27 for CSC crimes involving force or coercion was not required, there was no instructional error. Accordingly defense counsel was not ineffective for failing to request CJI2d 20.27.

In the RB case, an instruction on the defense of consent would be required only if there was evidence of consent. *People v Stull*, 127 Mich App 14, 19; 338 NW2d 403 (1983); see also *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005) ("The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence."). Defendant has not established any admissible evidence that RB consented to sexual penetration. Defendant's reliance on his own statement to a police officer, which was elicited by defense counsel on cross-examination of the officer, is misplaced because the trial court struck that testimony. Because defendant's statement was not offered against defendant, but rather by defendant in support of the defense theory, it was not admissible under MRE 801(d)(2)(A). Furthermore, the trial court instructed the jury on the element of force or coercion as part of the elements of third-degree CSC in the RB case. The court instructed the jury that "[f]orce or coercion means the defendant either used physical force or did something to make either [RB or CM] or both of them reasonably afraid of a present or future danger." Although defendant argues that defense counsel should have requested CJI2d 20.24, that instruction lists only various forms of force that should be chosen where applicable. Under the instructions provided, the jury could convict defendant of third-degree CSC only if it found beyond a reasonable doubt that he accomplished the sexual penetration by force or coercion. Therefore, defendant has not established that the trial court's instructions regarding force or coercion were insufficient to fairly present this element to the jury or to protect his rights. See *Knapp*, 244 Mich App at 376. Accordingly, defendant has not established that defense counsel was ineffective by not requesting additional instructions.

---

[5] MCR 2.512(D), as amended effective March 1, 2014, now requires the use of the Model Criminal Jury Instructions.

Next, defendant argues that defense counsel was ineffective for failing to sufficiently impeach RB's credibility. The questioning of a witness, including cross-examination, is presumed to be a matter of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008); *In re Ayres*, 239 Mich App 8, 608 NW2d 132 (1999). To show ineffective assistance of counsel, defendant must establish that the failure to present witnesses or evidence deprived him of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013); *Payne*, 285 Mich App at 190. It is clear from the record that defense counsel utilized RB's preliminary examination testimony to highlight inconsistencies with her trial testimony. Defense counsel also called Detroit Police Officer Kimree Beckrem as a defense witness to elicit testimony regarding her interview of RB on December 21, 2011, to impeach aspects of RB's trial testimony. Defendant has not demonstrated that defense counsel's impeachment efforts fell below an objective standard of reasonableness. See *Nix*, 301 Mich App at 207.

After carefully reviewing defendant's many claims of ineffective assistance of counsel, we are not persuaded that counsel committed any serious mistakes that, whether considered singularly or cumulatively, rendered his performance below an objective standard of reasonableness and denied defendant a fair trial. *Knapp*, 244 Mich App at 388. Defendant has also failed to establish that remand for an evidentiary hearing on any of his claims is necessary.

## C. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor's conduct denied him a fair trial. Because defendant did not object to the prosecutor's conduct below or request a curative jury instruction, his claims of misconduct are not preserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). In addition, reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476. Defendant's alternative claims that defense counsel was ineffective for failing to object to the prosecutor's conduct are reviewed for errors apparent from the record. *Heft*, 299 Mich App at 80.

The record does not support defendant's claim that the prosecutor knowingly presented or failed to correct false testimony at trial. A defendant's due process rights are violated when his conviction is "obtained through the knowing use of perjured testimony." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[A] prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Here, defendant's claim of misconduct is predicated on inconsistencies in testimony. Knowledge of false testimony is not imputed to the prosecutor merely because testimony is inconsistent with prior testimony or statements. *People v Lester*, 232 Mich App 262, 277; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014); *People v Parker*, 230 Mich App 677, 759; 584 NW2d 753 (1998). Rather, the inconsistencies may provide grounds for impeachment. *People v White*, ___ Mich App ___; ___ NW2d ___ (Docket No. 318590, issued January 13, 2015), slip op at 3-4. Defendant has not established that the prosecutor knowingly allowed false testimony to stand uncorrected. Further, it was not improper for the prosecutor to urge the jury to believe RB's

-14-

testimony. A prosecutor may argue that a witness is credible based on the evidence. *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008).

Defendant also argues that the prosecutor improperly argued facts that lacked evidentiary support when she remarked in closing argument that defendant threw RB on ground. A prosecutor may not argue facts that are not supported by the evidence, but is free to argue the evidence and all reasonable inferences arising from it as it relates to the prosecutor's theory of the case. *Id.* at 236. When reviewing a prosecutor's remarks, this Court must examine the entire record and evaluate the remarks in context. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). The record discloses that the prosecutor inaccurately stated that RB was thrown to the "ground." Her testimony at trial was that defendant pushed her down on a mattress. But the trial court instructed the jury that "[l]awyer's statements and arguments are not evidence" and "[a]ccept only those things the lawyers say supported by the evidence or by your own common sense and general knowledge." The jury is presumed to have followed its instructions. *Unger*, 278 Mich App at 235. Further, reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476. Thus, the trial court's instruction was sufficient to cure any perceived prejudice caused by the prosecutor's isolated misstatement.

Defendant also argues that the prosecutor's opening statement regarding defendant's flight from the police before he was arrested was not supported by the evidence. "Opening statement is the appropriate time to state the facts that will be proved at trial." *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010). At trial, Officer Strong testified that defendant drove off in a U-Haul truck at high rate of speed when she attempted to follow him. She later found the U-Haul truck, which had been abandoned. When Detroit Police Sergeant Benito Mendoza arrested defendant shortly thereafter, defendant stated, in reference to Officer Strong's car, "That looks like the car that was chasing me earlier." This evidence supports the prosecutor's opening statement. Accordingly, there was no error.

It appears that the prosecutor misstated RB's preliminary examination testimony during her direct examination of RB at trial when she stated that RB had testified that defendant "socked" her, rather than "stopped" her, as RB was getting ready to leave the abandoned house. However, a timely objection to the prosecutor's question could have given the trial court an opportunity to cure any perceived prejudice. Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476. In addition, the misstatement was not outcome determinative of defendant's convictions for third-degree CSC. It was not necessary that the prosecutor establish that defendant hit RB in order to establish force or coercion. Further, the prosecutor did not use the evidence to argue that the defendant "socked" RB, but rather to argue that he stopped RB from leaving.

Defendant has also failed to establish that the prosecutor's redirect examination of RB regarding other preliminary examination testimony amounts to outcome-determinative plain error. *Gibbs*, 299 Mich App at 482. Again, a timely objection to the prosecutor's question could have given the trial court an opportunity to cure any perceived prejudice. Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476. Further, we find no support for defendant's unpreserved argument that the prosecutor's entire redirect examination of RB was objectionable because it exceeded the scope

of cross-examination. The trial court had discretion to permit open redirect examination. *People v Stevens*, 230 Mich App 502, 507; 584 NW2d 369 (1998). The prosecutor's redirect examination was brief and it followed the trial court's expression of concern that the jury might have been confused by defense counsel's cross-examination of RB because the jury heard certain preliminary examination testimony indicating that defendant himself had questioned RB at the preliminary examination. Because both defense counsel and the trial court approved of the prosecutor asking RB on redirect examination whether she was questioned by defendant at the preliminary examination, there was no plain error. *Dobek*, 274 Mich App at 70 (good-faith efforts to admit evidence is not misconduct). Further, defendant has not shown that defense counsel's failure to object to the prosecutor's redirect examination was objectively unreasonable. *Nix*, 301 Mich App at 207.

Defendant's claim regarding defense counsel's failure to object to leading questions at the due diligence hearing is more in the nature of a claim of ineffective assistance of counsel rather than prosecutorial misconduct. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. A "leading question" suggests an answer from the person questioned. See *Black's Law Dictionary* (10th ed), p 1023. Reversal is not warranted simply because a prosecutor uses leading questions. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Rather, there must be prejudice to the defendant or a pattern of eliciting inadmissible testimony. *Id.* We are not persuaded that the prosecutor's questions at the due diligence hearing were improper or leading. Regardless, that hearing was conducted outside the jury's presence and defendant has not explained how he was prejudiced by the prosecutor's questions, which were intended to develop Officer Ortiz's testimony regarding the extent of the efforts made to locate CM for trial. Defendant has failed to establish that defense counsel's failure to object to the prosecutor's questions was either objectively unreasonable or prejudicial. *Nix*, 301 Mich App at 207.

With respect to defendant's argument predicated on the prosecutor's failure to produce the victims' psychological records, our analysis in part IV of this opinion is dispositive of this issue. To the extent that defendant adds that defense counsel should have used an investigator to obtain information regarding RB's and CM's mental health diagnoses or treatment, his argument is more in the nature of a claim of ineffective assistance of counsel, not prosecutorial misconduct. Given defendant's failure to establish any factual support for a finding that such information would have been helpful, defendant's claim cannot succeed. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (Defendant "bears the burden of establishing the factual predicate for his claim.").

Although defendant also complains that defense counsel failed to object to the prosecutor's introduction of RB's medical reports for lack of foundation, he does not indicate what foundational requirements the prosecutor was required to satisfy. An appellant may not merely assert a position and leave it to this Court to discover and rationalize the basis for his claim. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

## D. NEWLY DISCOVERED EVIDENCE

Defendant also argues that CM's post-conviction affidavit recanting her preliminary examination testimony entitles him to appellate relief. Defendant did not raise this issue in a

motion for a new trial in the trial court.  Therefore, the issue is unpreserved and we review for plain error.  *Carines*, 460 Mich at 763.  We have limited our review of CM's affidavit and the other documents submitted by defendant that are not part of the record on appeal to determine whether a remand for further proceedings would be appropriate.  See MCR 7.211(C)(1)(a) and *Williams*, 275 Mich App at 200; see also MCR 7.216(A)(5) and (7).

A defendant seeking a new trial based on newly discovered evidence must show "(1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial."  *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (citations omitted).  "Where such evidence, however, takes the form of witnesses' recantation testimony, it has been traditionally regarded as suspect and untrustworthy."  *People v Barbara*, 400 Mich 352, 362-363; 255 NW2d 171 (1977).  The grant of a new trial based on recantation testimony is committed to the trial court's discretion, but Michigan courts have been reluctant to grant new trials on this ground.  *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992).  A trial court may appraise the credibility of a recanting witness or other trial witnesses in making its determination.  *Id.*

We conclude that CM's affidavit does not justify a remand.  The affidavit contains information regarding CM's contact with police officers before trial that is contrary to the record evidence.  Moreover, although CM avers that she told the police that she would not be appearing at trial because she was not interested in falsely accusing defendant of rape, she provided no details regarding this alleged contact with the police or the identity of the officers she spoke to.

CM's affidavit also addresses the substance of her preliminary examination testimony.  Consistent with her testimony, CM indicated in the affidavit that she engaged in oral sex with defendant in exchange for crack cocaine.  She also indicated that she bargained for a few more hours of sex for another $20.  But with respect to details of what occurred after this monetary arrangement, the affidavit provided only vague allegations regarding CM's crack addiction being out of control, being high at the time of the preliminary examination, and her drug use making her "misperceive some of what happened."  CM's affidavit further avers:

> What I do know for sure is me and Mr. Carter had sex later on that was consensual just as the earlier sex was.  Police had been harassing me as I work the streets and they promised to give me a break if I caught a date with "[t]he guy in the U-haul that picks up girls around here and cry rape."  I told them yeah I see the guy almost every day and I would do it if they would then leave me alone.  So I lied[.]

Considering the suspect nature of recantation testimony, CM's failure to adequately explain how she might misperceive some things but know that all of the sexual acts were consensual, and the absence of any trial evidence to corroborate CM's claim that she was part of a police setup that required her to "cry rape," we conclude that remand for further proceedings on this issue is not warranted.

### E.  SELF-REPRESENTATION

-17-

Defendant also argues that the trial court violated his right to self-representation at the preliminary examination in the CM case. We disagree. The preliminary examination is not a constitutionally-based procedure, but rather a statutory right. *People v McGee*, 258 Mich App 683, 695; 672 NW2d 191 (2003). Regardless, a request for self-representation is not effective unless the defendant unequivocally asserts the right. *People v Williams*, 470 Mich 634, 644; 683 NW2d 597 (2004); *People v Anderson*, 398 Mich at 367. Any ambiguity is to be resolved in favor of representation by counsel. *People v Russell*, 471 Mich 182, 193; 684 NW2d 745 (2004).

The record does not establish that defendant made an unequivocal request for self-representation. The transcript discloses that defendant was then represented by retained counsel. Defendant expressed an intention to question witnesses and to have retained counsel function as standby counsel, but retained counsel informed the court that he was not willing to function in that capacity, and that it would be up to defendant to decide if he wanted to continue with counsel or represent himself. A defendant's request for standby counsel is a valid consideration, but is not dispositive of whether a defendant's request for self-representation was unequivocal. *People v Hicks*, 259 Mich App 518, 530; 675 NW2d 599 (2003). Considering that defendant was alerted to the fact that retained counsel would not function as standby counsel, that defendant did not express any desire to have retained counsel withdraw, and that defendant only asked to be allowed to question witnesses, we conclude that defendant failed to make an unequivocal request for self-representation.

### F. OTHER EVIDENTIARY ISSUES

Defendant argues that the trial court erred by refusing to allow him to recall RB as a witness at trial. We disagree. "The decision whether to recall a witness is left to the sound discretion of the trial court." *Williams*, 470 Mich at 643; see also MRE 611(a). The record discloses that the trial court recognized its discretion to allow defendant to recall RB and gave defendant an opportunity to submit an offer of proof regarding the additional questions he wanted to ask RB if she was recalled as a witness. The court determined that defendant's proposed questions involved matters that had already been covered or were argumentative. Under these circumstances, the trial court did not abuse its discretion by declining to grant defendant's request to recall RB as a witness.

Defendant also points out that the trial court denied his request to ask RB about she wears in the prostitution business. Although MRE 611(c) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility," a trial court retains discretion to place reasonable limits on a party's cross-examination of a witness based on concerns such as harassment, prejudice, confusion of the issues, the witness's safety, or questions that are repetitive or marginally relevant. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The proposed question was offered after RB described the tights she wore at the time of the sexual assault. Defendant has not established the relevance of the type of clothing RB wore in the prostitution business to the charges. MRE 401. Therefore, he has not established that the trial court abused its discretion by not allowing the question.

Further, the trial court did not abuse its discretion by denying defense counsel's request to have RB's direct examination testimony read back to her during cross-examination for the purpose of highlighting an inconsistency between her direct examination and cross-examination

testimony. MCL 768.29; MRE 611(a); see also *Adamski*, 198 Mich App at 138. The trial court appropriately observed that the jury was free to determine itself whether RB's cross-examination testimony conflicted with her direct examination testimony.

Defendant has also failed to establish that the trial court inappropriately interrupted defense counsel's cross-examination of RB. The court's interjections were brief, minimal, and justified under the circumstances. There was no plain error. *Carines*, 460 Mich at 763.

Defendant also argues that the trial court erred by allowing Officer Ortiz to testify that, based on his experience, it would not be surprising for a person involved in prostitution or illegal drug activity to not initially report such activities when reporting another crime. Contrary to what defendant argues, this testimony did not amount to improper commentary on or vouching for the credibility of either CM or RB. See *Dobek*, 274 Mich App at 71. We therefore reject this claim of error.

Defendant also argues that the trial court erred by allowing Office Kane to read a statement he took from CM regarding the charged offenses on redirect examination by the prosecution. Because defendant did not object to Officer Kane reading the statement, but only to Officer Kane providing an opinion regarding what was said, this issue is not preserved, *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993), and our review is limited to plain error. *Carines*, 460 Mich at 763. Defendant argues that CM's statement was inadmissible hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). It is clear from the record that CM's statement was not offered for its truth, but rather to provide context for portions of the statement that defense counsel had elicited on cross-examination. Under MRE 106, the trial court had discretion to allow the prosecutor to introduce any other portion of the writing that ought in fairness be considered contemporaneously with it. See also *People v Fackelman*, 489 Mich 515, 545 n 22; 802 NW2d 552 (2011). Because MRE 106 supports the prosecutor's use of the written statements, which involved a nonhearsay purpose, there was no plain error.

Defendant also makes a cursory clam that his Sixth Amendment rights were violated by restrictions placed on his cross-examination of witnesses. Because the right to cross-examine witnesses is not unlimited, we reject defendant's argument. *Adamski*, 198 Mich App at 138. Defendant's claim that he was denied due process similarly fails because a defendant's right to present evidence is not absolute. *Unger*, 278 Mich App at 250. Defendant has not established any evidentiary matter that amounts to constitutional error.

## G. JURY INSTRUCTIONS

Defendant argues that he is entitled to a new trial because the trial court failed to instruct the jury of the defense of consent. As previously indicated in part V(B), the trial court's jury instructions were sufficient to present this issue to the jury. Further, with the exception of the trial court's flight instruction, defense counsel expressed satisfaction with the trial court's jury instructions, thereby waiving any other claim of instructional error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). A waiver extinguishes any error. *Id.*

Defendant claims that the trial court erred by instructing the jury on flight without any evidence to support the instruction. We disagree. Officer Strong's testimony that defendant drove off in a U-Haul truck at high rate of speed when she attempted to follow him and that she later found the truck abandoned, and the testimony that defendant made a statement at the time of his arrest in reference to Officer Strong's car that it "looks like the car that was chasing me earlier," was sufficient to support the trial court's flight instruction. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) ("The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody."). Defendant's claim is based on an incorrect assertion that his statement at the time of his arrest was inadmissible hearsay, discussed *supra*. Defendant also claims that the testimony of the police officers regarding the color of Officer Strong's car was inconsistent, and, thus, did not establish that defendant was chased by Officer Strong's car. However, we conclude that such an inconsistency relates to weight of the evidence and not admissibility. *Unger*, 278 Mich App at 223, 228.

## H. JUDICIAL BIAS

Defendant also seeks a new trial on the ground that the trial court was biased against him. Because defendant failed to present this claim to the trial court, the issue is unpreserved and defendant has the burden of establishing a plain error affecting his substantial rights. *Carines*, 460 Mich at 763; *Jackson*, 292 Mich App at 597. Defendant must overcome a heavy presumption of judicial impartiality. *Jackson*, 292 Mich App at 598. The appropriate test is to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality by unduly influencing the jury and thereby depriving the defendant of a fair and impartial trial. *Id.* Defendant primarily relies on unfavorable judicial rulings to support his claim of judicial bias. In *Jackson*, this Court explained:

> Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. [*Id.* at 598 (citations omitted).]

Our review of defendant's various claims in light of the lower court record fails to reveal any deep-seated favoritism or antagonism that would make fair judgment impossible. Defendant has failed to establish that the trial court made comments that would unduly influence the jury and thereby deprive him of a fair and impartial trial. Accordingly, we find no merit to this issue.

## I. SUFFICIENCY OF THE EVIDENCE (CM CASE)

Defendant also challenges the trial court's decision denying his motion to quash the information in the CM case. Because the trial evidence was sufficient to support defendant's convictions for kidnapping and three counts of first-degree CSC in the CM case, it is unnecessary to address the motion. See *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006); *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002).

When considering a challenge to the sufficiency of the evidence, an appellate court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *Gillis*, 474 Mich at 113. Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of an offense. *Unger*, 278 Mich App at 223.

CM testified that she became uncomfortable while she was inside defendant's truck and tried to leave, but defendant grabbed her and pulled her back inside the truck. Defendant then drove to another location and made her engage in sexual acts. Viewed in a light most favorable to the prosecution, this testimony was sufficient to establish the requisite restraint for kidnapping. MCL 750.349(2). Further, a rational trier of fact could find from CM's testimony that defendant knowingly restrained CM with intent to sexually assault her. MCL 750.349(1)(c). The weight and credibility of her testimony was for the jury to resolve. *Unger*, 278 Mich App at 222. Therefore, the evidence was sufficient to support the kidnapping conviction. A rational trier of fact could also find beyond a reasonable doubt that defendant engaged in acts of sexual penetration with CM under circumstances involving the commission of felony kidnapping. Therefore, the evidence was also sufficient to support the first-degree CSC convictions. MCL 750.520b(1)(c).

## J. GREAT WEIGHT OF THE EVIDENCE (RB CASE)

Defendant argues that the jury's verdict in the RB case is against the great weight of the evidence. Defendant failed to preserve this issue by raising it in a motion for a new trial. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Therefore, defendant has the burden of establishing a plain error affecting his substantial rights. *Id.*

The circuit court may order a new trial if it concludes the verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Lacalamita*, 286 Mich App at 469. Although defendant argues that RB's testimony was not credible, issues of witness credibility are "within the exclusive province of the jury." *Id.* at 470. " 'Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial.' " *Id.*, quoting *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Conflicting testimony does not warrant a reversal unless the testimony contradicted undisputed physical facts or the witness was so far impeached that the testimony lost all probative value. *People v Roper*, 286 Mich App 77, 89; 777 NW2d 483 (2009). Although RB's testimony presented credibility issues for the jury to resolve, her testimony was not so seriously impeached that it could not be believed. Defendant has not established any exceptional circumstances for interfering with the jury's assessment of RB's credibility. Accordingly, defendant is not entitled to relief on this basis.

## K. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court erroneously scored four OVs in the RB case. We disagree. Where a scoring challenge is preserved, we review the trial court's factual determinations for clear error and review its application of the facts to the law de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

We first consider defendant's challenge to the trial court's assessment of 10 points for OV 3. A 10-point score for OV 3 is appropriate where "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Only five points are scored for a bodily injury that does not require medical treatment. MCL 777.33(1)(e). RB testified that she injured her knee when she was pushed by defendant, and a photograph of the injury was presented at trial. In addition, medical records indicated that RB was treated for the knee injury. Accordingly, the trial court did not err in assessing 10 points for OV 3.

We next address defendant's challenge to the trial court's assessment of 25 points for OV 13. Although defense counsel expressly informed the trial court that there was no objection to the scoring of OV 13, consideration of this issue is warranted because defendant argues that defense counsel was ineffective for failing to object. A 25-point score for OV 13 is appropriate if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The instructions provide that "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). However, conduct used to score this variable should not be scored in OV 11 or OV 12. MCL 777.43(2)(c).

The trial court scored 50 points for OV 11 in the RB case. A 50-point score is appropriate where "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a).[6] Because the evidence established that there were three criminal sexual penetrations in the RB case, a 50-point score for OV 11 was appropriate. Pursuant to MCL 777.43(2)(c), however, the two additional penetrations that were used to score OV 11 could not also be used to score OV 13. Defendant's challenge to the trial court's scoring of OV 13 is based on his assumption that the trial court would have been required to use the charges in the two dismissed cases to score OV 13. Contrary to what defendant argues, however, his convictions in the CM case were alone sufficient to support the 25-point score for OV 13. Thus, defense counsel was not ineffective for failing to object to the scoring of OV 13. Counsel need not make a futile objection. *Crews*, 299 Mich App at 401.

Defendant also challenges the trial court's assessment of 15 points for OV 1 and five points for OV 2. A court should assess 15 points for OV 1 if "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened by a knife of other cutting or stabbing weapon." MCL 777.31(1). A 5-point score for

_____

[6] The instructions for this variable provide:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of first- or third-degree criminal sexual conduct offense. [MCL 777.41(2).]

-22-

OV 2 is appropriate where "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). Defendant argues that these variables should not have been scored because RB did not identify the type of weapon that was used to threaten her. However, RB's testimony describing the item as a sharp object that defendant held on or near her neck was sufficient to identify the object as a "knife or other cutting or stabbing weapon" within the meaning of OV 1 and OV 2. Thus, defendant has not demonstrated that he is entitled to resentencing in the RB case.

It is unclear whether defendant intends for his scoring challenges to also apply to the CM case. We note that OV 1 and OV 2 were not scored in the CM case. To the extent that defendant is raising the same challenge to the scoring of OV 13 in the CM case as he is in the RB case, we find no error because defendant's separate convictions in the RB case were sufficient to establish the requisite "pattern of felonious criminal activity involving 3 or more crimes against a person" necessary to support a 25-point score. MCL 777.43(1)(c). It is unnecessary to address the trial court's assessment of 10 points for OV 3 in the CM case because any error in scoring that variable will not affect the appropriate guidelines range. Accordingly, defendant also is not entitled to resentencing in the CM case.

## L. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant also argues that he was denied the effective assistance of appellate counsel because of appellate counsel's failure to raise the various issues raised in defendant's Standard 4 brief. This Court applies the same legal standard for ineffective assistance of trial counsel when scrutinizing the performance of appellate counsel. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Although defendant complains about appellate counsel's failure to raise additional issues, "[a]ppellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *People v Uphaus (On Remand)*, 278 Mich App 174, 186-187; 748 NW2d 899 (2008). Appellate counsel's decision is presumed to constitute sound strategy. *Id.* at 186. Defendant has failed to overcome this presumption. Moreover, because defendant has been afforded an opportunity to raise additional issues in a Standard 4 brief and we have considered those issues, defendant cannot establish that he was prejudiced by appellate counsel's failure to raise the additional issues. *Lopez*, 305 Mich App at 694.

## M. CONCLUSION

After considering the many claims raised in defendant's Standard 4 brief, we find no basis for appellate relief. And because we conclude that there is no basis for remanding this case for further proceedings, it is unnecessary to address defendant's request that the case be reassigned to another judge in the event of a remand.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-23-