PEOPLE v HICKS

Docket No. 239981. Submitted July 15, 2003, at Detroit. Decided December 2, 2003, at 9:05 A.M. Leave to appeal sought.

Rodney P. Hicks was convicted by a jury in the Wayne Circuit Court, Timothy M. Kenny, J., of unarmed robbery following a trial in which the defendant represented himself but had standby counsel. The court, exceeding the sentencing guidelines recommendation, sentenced the defendant to imprisonment for 14 to 22½ years. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion by permitting the defendant to represent himself at trial. In granting the defendant's request for self-representation, the trial court determined that the request was unequivocal, that the defendant's assertion of the right to self-representation was made knowingly, intelligently, and voluntarily, and that the defendant would not unruly disrupt the court while acting as his own counsel. Additionally, as required by MCR 6.005, the trial court, before acting on the request, informed the defendant of the charge and possible penalty, advised the defendant of the risks of self-representation, and offered the defendant an opportunity to consult with a lawyer. The fact that the request for self-representation in this case was accompanied by a request for standby counsel did not make the request for self-representation equivocal.

2. The conviction was supported by evidence sufficient to support a conclusion that the defendant took the victim's purse by force and violence.

3. The defendant's claims of prosecutorial misconduct lack merit. The prosecutor, who was free to argue the evidence and all reasonable inferences arising from the evidence as they related to the theory of the case, did not mischaracterize the evidence by arguing that the defendant had grappled with the victim for possession of the victim's purse. The prosecutor did not argue facts not in evidence, place the prestige of the prosecutor's office before the jury, vouch for the truthfulness of the prosecution's case, or denigrate the defendant when responding to the defendant's personal attack on the prosecutor.

4. The trial court, when scoring the defendant's sentence under the sentencing guidelines, incorrectly assessed ten points for offense variable 4, serious psychological injury requiring professional treatment of the victim, in the absence of evidence of serious psychological injury to the victim. Notwithstanding that error, the trial court did not abuse its discretion in departing from the guidelines in light of the substantial and compelling reasons it gave for the departure, i.e., the defendant's criminal history and misconduct during prior incarceration, the seriousness of the robbery offense, and the need to protect the public from the danger posed by the defendant.

Affirmed.

CRIMINAL LAW — WAIVER OF COUNSEL — SELF-REPRESENTATION.

A court, before granting a criminal defendant's request to proceed in propria persona, must determine that the defendant's request for self-representation is unequivocal, that the defendant's assertion of the right to self-representation is made knowingly, intelligently, and voluntarily, and that the defendant will not unduly disrupt the court while acting as his own counsel; additionally, the court must inform the defendant of the charge and possible penalty, advise the defendant of the risks of self-representation, and offer the defendant an opportunity to consult with a lawyer (MCR 6.005[D]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Ana Quiroz*, Assistant Prosecuting Attorney, for the people.

*Martin J. Beres* for the defendant on appeal.

Before: WILDER, P.J., and GRIFFIN and GAGE, JJ.

WILDER, J. Defendant appeals by right his conviction of unarmed robbery, MCL 750.530, following a jury trial, and his sentence of 14 to 22½ years' imprisonment. We affirm.

I. FACTS AND PROCEEDINGS

Defendant's conviction arises out of an incident on March 28, 2001, outside a Mobil gasoline station on Fenkell Road in Detroit. Erin Branham, the victim, testified that she arrived at the gas station around 5:00 A.M. to meet a coworker who daily drove her to work. Branham entered the station to make a purchase and noticed that two men entered shortly after she did. She recognized them from other encounters at the gas station and had a brief conversation with them. After making her purchase, Branham left the station and waited outside for her coworker. As she stood with her purse strap over her shoulder and her hand on her purse, she felt someone pulling her purse strap from behind her. She reacted by moving forward, and the tugging grew stronger, forcing her backward. She struggled to hold on to her purse, but the perpetrator wrestled the purse away from her and ran down Fenkell Street. As the perpetrator ran away, Branham recognized him as one of the men she spoke to in the gas station that morning, later identified as defendant.

Valerie Jackson, an employee of the Mobil station, witnessed the incident from inside the gas station. Immediately after the incident, Branham entered the gas station and asked Jackson to call the police, which she did. A few minutes later, Branham flagged down two passing police officers, Officer Mark Frazier and Officer John Baritche, told them about the incident, and described the perpetrator to them. Jackson confirmed Branham's description of the perpetrator to the officers, and the officers immediately

informed their dispatcher of the crime and the perpetrator's description.

A few minutes later, the officers received a call from their police sergeant, who was at a BP gas station six or seven blocks down the street. Officers Frazier and Baritche went to the BP station and saw a man who matched Branham's description of the perpetrator. The officers approached the man, whom Officer Frazier identified in court as defendant, and arrested him. When the officers searched defendant's person upon arrest, papers, bills, and medical cards, including items belonging to the victim, fell out of defendant's sweatshirt.

After his arrest, defendant provided a written statement that read: "[Y]es, I was in the gas station. Me and her [sic] talked for a while. She went outside to look for her ride, and I went outside and snatched her purse and went about my business."

During trial, defendant, who represented himself with the assistance of his former counsel, rested without presenting any evidence. In his closing argument, defendant admitted committing larceny from a person, but claimed that he did not commit unarmed robbery. The jury convicted defendant of unarmed robbery. The trial court subsequently sentenced defendant to 14 to 22½ years' imprisonment, departing from the sentencing guidelines range of 50 to 125 months. Defendant now appeals.

## II. STANDARDS OF REVIEW

We review for an abuse of discretion the trial court's decision to permit defendant to represent himself. *People v Russell*, 254 Mich App 11, 18; 656 NW2d

817 (2002). We review a challenge to the sufficiency of the evidence by examining all the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002), citing *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). Generally, we review claims of prosecutorial misconduct on a case-by-case basis to determine whether, examining the record as a whole, the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 267; 531 NW2d 659 (1995). However, because defendant did not object to the prosecutor's comments at trial, our review is limited to determining whether plain error occurred that affected defendant's substantial rights. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000), citing *People v Carines*, 460 Mich 750, 761-762; 597 NW2d 130 (1999).

We review the trial court's scoring of a sentencing guidelines variable for clear error. *People v Witherspoon*, 257 Mich App 329, 334-335; 670 NW2d 434 (2003), citing *People v Fields*, 448 Mich 58, 77; 528 NW2d 176 (1995). A scoring decision is not clearly erroneous if the record contains " '*any* evidence in support' of the decision." *Witherspoon, supra* at 335, citing *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996) (emphasis in *Witherspoon*). We review for an abuse of discretion whether a stated reason for departure from the sentencing guidelines constitutes a substantial and compelling reason for departure. *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003), quoting *Fields, supra* at 77-78.

III. ANALYSIS

Defendant first argues that the trial court abused its discretion by permitting defendant to represent himself at trial because his request was not unequivocal and was not made knowingly and intelligently. We disagree.

"Proper compliance with the waiver of counsel procedures . . . is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Adkins (After Remand)*, 452 Mich 702, 720-721; 551 NW2d 108 (1996). Before a trial court grants a request for self-representation, the trial court must find (1) that the request is unequivocal; (2) that the assertion of the right of self-representation is knowing, intelligent, and voluntary, with the defendant having been made aware by the trial court of the "dangers and disadvantages of self-representation"; and (3) that the defendant "will not unduly disrupt the court while acting as his own counsel." *People v Ahumada*, 222 Mich App 612, 614-615; 564 NW2d 188 (1997), citing *Adkins, supra* at 706, 722; *People v Anderson*, 398 Mich 361, 366-368; 247 NW2d 857 (1976). Additionally, MCR 6.005 imposes a duty on the trial court to inform the defendant of the charge and penalty he faces, advise him of the risks of self-representation, and offer him the opportunity to consult with retained or appointed counsel. *Ahumada, supra* at 614-615. These requirements are "vehicles to ensure that the defendant knowingly and intelligently waived counsel with open eyes." *Adkins, supra* at 725.

Immediately before trial began in the instant case, defense counsel informed the trial court that defendant had informed her that defendant wanted to represent himself. Defendant further explained his position to the trial court:

> As far as my attorney, I wouldn't say I want to fire her, but I put her on the back burner as far as she can be my assistance [sic] in dealing in this case here because everything that I asked her to do she haven't [sic] done. You know what I'm saying and . . . .

The trial court interjected, "What is that?" Defendant continued:

> I feel that I'm more competent in doing the job than [defense counsel] is, you know. So, you know, but I'm not saying I want to just give up all my rights to where I would like to have an attorney on the back burner. You know that being, you know, give me a little guidance, little assistance, but I feel that I am more competent in handling this case than she was.

The trial court then inquired about why defendant believed he was more competent than his attorney and asked defendant to tell him about his background. Defendant digressed to addressing issues involved in his case, and the trial court eventually told defendant that he should speak to his attorney about the matters defendant wanted the trial court to consider. Before conferring with his attorney, defendant again told the trial court:

> Before you go, before you go, I'mo [sic] say this here before you go. I could represent myself, and instead of you saying "attorney," I don't—I can do it myself. I understand what you say.

But when it comes down to we['re] in a disagreement when it come to my trial tactics, you know, she says she can't do my trial tactics. That she wants to do her own her, and it hurts me for her to do it the way she wants to do it. So I can't advise her to be my attorney if she is not in my best interest.

After defendant conferred with his attorney, the following colloquy transpired:

*The Court*: Okay. Mr. Hicks, would you stand for the moment please?

Mr. Hicks, the law requires me to tell you certain items of information and ask you certain questions before I make a determination as to whether or not you're going to represent yourself.

Am I correct in understanding that you absolutely want to represent yourself?

*Defendant Hicks*: Yes, sir.

*The Court*: No question about that?

*Defendant Hicks*: No question about that.

*The Court*: Okay.

*Defendant Hicks*: With the help of—

*The Court*: Oh, absolutely. Yes. Ms. Heard will remain and sit through the case and provide you with the opportunity to consult with her.

You understand that?

*Defendant Hicks*: Yes.

The trial court then stated that it was aware of *Anderson, supra,* and MCR 6.005(D), and informed defendant that he was charged with unarmed robbery, which "carries with it a maximum possible penalty of 15 years in prison," and that a notice had been filed indicating that defendant was an habitual-offender, fourth offense, which meant that defendant "could face up to life in prison." Defendant replied

affirmatively when asked if he understood what the trial court had told him.

The trial court also informed defendant that although he was not a lawyer, he would be required to follow the rules applying to lawyers and that it was "very unwise" for him to represent himself. Referring to a picture of Abraham Lincoln in the courtroom, the trial court informed defendant that Abraham Lincoln said that "anyone who chooses to represent himself has a fool for a client." Defendant stated that he "had heard that a thousand times." The trial court again inquired, "You wish to represent yourself; is that true, Mr. Hicks?" Defendant replied, "Yes, sir." The trial court then permitted defendant to represent himself, with his former defense counsel available to assist him.[1] Before the jury entered the courtroom on the second day of trial, the trial court asked defendant if he wished to continue representing himself, and defendant responded affirmatively.

Defendant now claims that his request to represent himself was not unequivocal. Defendant relies primarily on the following language from Justice GRIFFIN's lead plurality opinion in *People v Dennany*, 445 Mich 412, 446; 519 NW2d 128 (1994) (GRIFFIN, J.):

> Because there is no substantive right to standby counsel, the trial court is under no obligation to grant such a request. Consequently, a request to proceed pro se with standby counsel—be it to help with either procedural or

---

[1] Although neither defendant nor the trial court used the term "standby counsel," it is clear that this familiar term accurately describes the relationship between defendant and his former attorney during the trial. Throughout the remainder of this opinion, the term "standby counsel" will be used for ease of reference.

trial issues—can never be deemed to be an unequivocal assertion of the defendant's rights.

We agree with the first proposition, that there is no substantive right to hybrid representation and that the trial court is under no obligation to grant a request for standby counsel. However, the second proposition upon which defendant relies to argue that, because he requested standby counsel when he announced his desire to represent himself, his request was equivocal as a matter of law, is one that we reject. We note that while Justices MALLETT and BRICKLEY concurred with Justice GRIFFIN, the four other justices deciding *Dennany* disagreed that a request for standby counsel makes a request for self-representation equivocal.

In explaining his position that the rule announced in the lead plurality opinion "creates a trap for the unwary defendant," *id.* at 454 (CAVANAGH, C.J.), Chief Justice CAVANAGH, with whom Justice LEVIN concurred, stated that

standby counsel is almost invariably appointed whenever a defendant chooses to represent himself. It is fundamentally unfair to punish a defendant for requesting what all presume will be provided in the first place. To allow the uninformed to unwittingly waive their right of self-representation merely by requesting standby counsel "is to imprison a man in his privileges and call it the Constitution." *Adams v United States ex rel McCann,* 317 US 269, 280; 63 S Ct 236; 87 L Ed 2d 268 (1942). [*Id.* at 456.]

Justice BOYLE agreed with the lead plurality opinion's conclusion that "a request for standby counsel is not, as a matter of law, an unequivocal assertion of a desire to proceed pro se." *Dennany, supra* at 458 (BOYLE, J.). However, Justice BOYLE, with whom Justice RILEY concurred, disagreed with extending that

proposition to hold that a request to proceed pro se accompanied by a request for standby counsel can never amount to an unequivocal assertion of a defendant's rights. *Id.* at 468 n 12 (BOYLE, J.). With regard to one of the cases consolidated in *Dennany*, she stated:

> When read in its entirety, the colloquy between defense counsel, the defendant, and the court suggests that [the defendant] was assenting to [the attorney's] appointment as standby counsel, not equivocating on his desire to proceed pro se.
>
> While discussion of standby counsel should be postponed until after the defendant fully waives his right to counsel and is proceeding pro se, when the subject does arise, as in this case, it is the trial judge who is in the best position to decide whether or not the defendant is equivocating with respect to his desire to proceed pro se. In the waiver context, Sixth Amendment rights do not turn on the expression of magic words, but on the understanding of the accused. That understanding is best determined as a question of fact by the trial judge . . . . [*Id.* (citation omitted).]

The lead plurality opinion in *Dennany* does not represent binding authority, and we are not inclined to follow it.[2] See *Felsner v McDonald Rent-A-Car, Inc,* 193 Mich App 565, 569; 484 NW2d 408 (1992). On the contrary, we conclude that a request for self-representation can be accompanied by a request for standby counsel and maintain its unequivocal nature. As Justice BOYLE stated, a request for standby counsel does

---

[2] We recognize that in *People v Seaton,* 106 Mich App 234, 236; 307 NW2d 454 (1981), this Court held that the defendant's request to proceed pro se was equivocal because the defendant wanted to share responsibilities with his lawyer. The Court in *Seaton* provided no rationale for its decision other than the fact that the defendant does not have a right to hybrid representation. *Id.* at 236, citing *People v Ramsey,* 89 Mich App 260; 280 NW2d 840 (1979). Additionally, *Seaton* is not binding on this Court. MCR 7.215(J)(1).

not necessarily indicate that the defendant is vacillating concerning his desire to represent himself. *Dennany, supra* at 468 n 12. Inherent in the trial court's ability to evaluate a waiver of counsel is the ability to determine whether the defendant is vacillating in his choice or merely requesting that which, as Chief Justice CAVANAGH noted, will likely be granted to the defendant anyway.[3]

Here, the trial court permitted defendant to represent himself after defendant repeatedly stated his desire to do so. The trial court was in the best position to determine from the circumstances whether defendant requested standby counsel because he did not want to represent himself or because he recognized that it would be difficult to navigate his trial with limited knowledge of the law. The trial court, in response to defendant's attempt to assert ineffective assistance of counsel during jury deliberations, commented on defendant's request for self-representation:

> Mr. Hicks, let me tell you so that the record is clear. It is rare that I have seen someone appear in trial with greater

---

[3] We note that four justices, Chief Justice CAVANAUGH joined by Justice LEVIN, and Justice BOYLE joined by Justice RILEY, concluded (albeit through differing reasoning in their separate opinions) that a request for standby counsel did not as a matter of law render a request for self-representation equivocal. While this issue was not dispositive or decisive in *Dennany*, our Supreme Court has said that "[w]hen a court of last resort intentionally takes up, discusses, and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum*, but is a judicial act of the court which it will thereafter recognize as a binding decision." *O'Dess v Grand Trunk W R Co*, 218 Mich App 694, 699; 555 NW2d 261 (1996), quoting *In re Cox Estate*, 383 Mich 108, 117; 174 NW2d 558 (1970) (emphasis in original). We note, therefore, that the nondispositive and nondecisive conclusion of the four justices in *Dennany*, that a defendant could make an unequivocal request to represent himself even though such request was contingent on appointment of standby counsel, might arguably be described as such a binding judicial act. Nevertheless, our opinion does not rest on such a determination.

enthusiasm and greater interest than you. Wild horses could not have kept you from representing yourself in this case.

So if there is going to be a review by some other higher court, I don't want them to think that somehow you were reluctantly trying to represent yourself. You couldn't wait to represent yourself.

We will not disturb the trial court's discretionary decision to permit self-representation merely because defendant requested standby counsel in connection with expressing his desire to represent himself.[4] Notably, defendant does not claim on appeal that the trial court misapprehended his intentions. He merely claims that, because he combined his request for self-representation with a request for standby counsel, his request was equivocal as a matter of law. Permitting defendant, equipped with the benefit of hindsight, to retract his clearly stated desire to represent himself solely because he requested standby counsel is tantamount to permitting him to harbor an appellate parachute, see *Adkins, supra* at 724, which we will not condone. Moreover,

"[t]o permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected. We would not permit it." [*Adkins, supra* at 725, quoting *Dennany, supra* at 436, quoting *People v Morton,* 175 Mich App 1, 8-9; 437 NW2d 284 (1989).]

---

[4] Of course, a trial court may validly consider that a defendant has requested standby counsel when deciding whether a defendant's request for self-representation is unequivocal.

Defendant also claims that his request for self-representation was not knowingly and intelligently made because the trial court did not adequately inform him of the disadvantages of self-representation. We disagree. The trial court informed defendant that it would be "very unwise" of him to represent himself and that "a man who represents himself has a fool for a client," a phrase defendant indicated he had heard "a thousand times." The trial court also informed defendant that he would be required to follow the rules applicable to lawyers. We conclude that the trial court adequately informed defendant of the disadvantages of self-representation. See *Russell, supra* at 16-18. Accordingly, we conclude that the trial court did not abuse its discretion by granting defendant's request for self-representation.[5]

Defendant next argues that the evidence was insufficient to sustain his conviction of unarmed robbery because the prosecution did not present evidence that defendant took the purse "by force and violence, or by assault or putting in fear," MCL 750.530. We disagree. Viewing the evidence in a light most favorable to the prosecution, the testimony reflects that the victim felt a tug on her purse strap, was pulled backward, reflexively lurched forward, and tried to turn her body to maintain possession of her purse. Additionally, the victim testified that the struggle aggravated her tendonitis. Valerie Jackson also testified that defendant and Branham struggled over the purse. This evidence supports a conclusion that defendant

---

[5] Defendant's contention that the trial court acted as though it had no discretion to deny his request to represent himself lacks merit. The trial court stated on the record that it would make the ultimate decision whether defendant would be permitted to represent himself.

took the purse by force and violence. Moreover, the force exerted by defendant was contemporaneous with the taking and, therefore, sufficient to support a verdict of unarmed robbery. See *People v Randolph*, 466 Mich 532, 536; 648 NW2d 164 (2002).

Defendant next raises several claims of prosecutorial misconduct. Defendant did not object to the prosecutor's allegedly improper remarks at trial. Accordingly, to avoid forfeiture of review of this issue, defendant must demonstrate that a plain error occurred that affected his substantial rights. *Schutte, supra.* Defendant fails to demonstrate that plain error occurred.

Defendant first claims that the prosecutor mis-characterized the evidence by indicating that defendant grappled with Branham for possession of the purse. The prosecutor is "free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case." *People v Schultz*, 246 Mich App 695, 710; 635 NW2d 491 (2001). As discussed above, it is reasonable to infer from Branham's testimony that she and defendant struggled for possession of the purse. Consequently, the prosecutor's argument was appropriate.

Defendant also claims that the prosecutor inappropriately stated that defendant robbed Branham. Defendant does not explain why he believes this was inappropriate, and we decline to address this issue. A party may not announce a position on appeal and leave it to this Court to unravel or elaborate his claims. *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998).

Next, defendant asserts that the prosecutor expressed personal belief in defendant's guilt and

"inaccurately attributed a legal conclusion" to Branham in closing arguments by stating:

> "I went about my business." I don't know what his business is, but he robbed Ms. Branham that day. He took her property when he had no right to do that, and then he ran away.
>
> Ms. Branham comes in and tells us that yes, this is the guy. This is the person here, Mr. Hicks, who robbed me, who came up from behind me, who grabbed my purse off my shoulder.
>
> Left shoulder, right shoulder, that didn't matter, but grabbed the purse off my shoulder, and I fought basically holding on to my purse.

Again, defendant fails to analyze why this section of the prosecutor's argument is improper, and we will not review it. *Mudge, supra.*

Next, defendant contends that the prosecutor demonstrated confusion when he stated:

> She tells us that yes, I fought back. I turned my shoulder, and it hurt my shoulder as he was pulling the purse off. Then Mr. Hicks says, "we didn't struggle did we?" She said, when he asked the question, she said, "we were struggling. We were struggling over that purse."

Although the prosecutor did not quote the testimony verbatim, his argument fairly characterizes the testimony and is not improper. *Schulz, supra.*

Finally, defendant claims that the prosecutor argued facts not in evidence, placed the prestige of the prosecutor's office before the jury, vouched for the truthfulness of the prosecution's case, and denigrated defendant by stating in rebuttal argument:

> I have been working in the system for 10 years. I respect that. But I don't respond well when people say that I'm try-

ing to mislead you or lie to you or trying to pull the wool over your eyes. I'm offended by those comments because it is simply not true for him to say that I shirked my responsibility as the prosecutor.

I like my job. I represent all the people, the defendant, the victim, all the people in the State of Michigan. It is my job to make sure the defendant gets a fair trial. That is my job. It's not like I'm a defense attorney, and my job is to win. My job is to be fair to all people that come to courtrooms, and I try very hard to do so.

So when he stands up and accuses me of lying and covering up, he simply has no evidence of that. It offends me greatly. But I want you to know that in this case that's just not true. I want you to judge the case based on the evidence, based on the facts . . . .

These comments were not improper because they constitute a fair response to defendant's closing argument. See *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). Defendant asserted in his closing argument that the prosecutor "allowed the complainant to tell a lie" and that "[y]our witness, the complainant, speaks out of both sides of her mouth, which means that she's not worthy of believing. Nor are you, Mr. Prosecutor. You had no business waisting [sic] the taxpayers' dollars on this case here. You went beyond your responsibility, Mr. Prosecutor." In light of defendant's personal attack on the prosecutor, the prosecutor's response was proper. *Watson, supra.*

With regard to his sentence, defendant first challenges the trial court's assessment of a ten point score for offense variable four (OV 4) in calculating the applicable sentencing guidelines.[6] We agree that the trial court scored OV 4 incorrectly. When evaluat-

---

[6] We note that the prosecution incorrectly states that defendant waived review of this issue by failing to provide a copy of the presentence report.

ing OV 4, MCL 777.34, the trial court must assess ten points if "[s]erious psychological injury requiring professional treatment occurred to a victim." Defendant accurately states that the record does not reflect any evidence of serious psychological harm to the victim or give any indication that she needed psychological treatment. Accordingly, the trial court erred by assessing ten points for OV 4. Taking into account defendant's status as an habitual offender, second offense, his correct sentencing guidelines range was 43-107 months.

Defendant next asserts that the trial court erred by departing from the sentencing guidelines range in fashioning his sentence. Despite the fact that we have concluded the appropriate sentencing guidelines range is lower than that calculated by the trial court, we disagree. We first reject defendant's argument that the trial court's characterization of defendant as a "predator" demonstrates that the trial court relied on uncharged acts to increase his sentence. Instead, the record shows that the trial court used the term "predator," a term first used at sentencing by the prosecution, to accurately describe the manner in which defendant approached a woman he could overpower and used his strength to accomplish his crime.

Next, defendant claims that the trial court erred by stating reasons for departing from the sentencing guidelines that were not substantial and compelling. Defendant's argument lacks merit. The trial court stated at sentencing that in committing this crime, defendant behaved as a predator and had previously

On the contrary, defendant did provide this Court with a copy of the report.

served a fifteen-year sentence for a conviction involving robbery, kidnapping, and sexual assault. The trial court noted that during his incarceration, defendant received thirty-four misconduct tickets. Additionally, the trial court stated its opinion that the sentencing guidelines "do not adequately protect the community from this type of behavior." Then, immediately before imposing its sentence, the trial court stated:

> People versus Babcock requires that there must be a substantial and compelling reason to deviate and in this particular circumstance I think the seriousness of your prior convictions, the aggravated circumstances of it being a robbery, a kidnapping and sexual assault of the victim, the fact that you were institutionally difficult to deal with, the fact that you maxed out on parole, and then a very short time later came back and revictimized a woman, the fact of the matter is we do in fact need to be protected from you.

The trial court's decision that these factors constitute substantial and compelling reasons for departure represents a principled choice and, therefore, does not constitute an abuse of discretion.[7] *Babcock, supra* at 269. Moreover, contrary to defendant's assertions, the sentence imposed by the trial court is proportionate to defendant's conduct and, in particular, his criminal history. Defendant spent fifteen years in prison for a combination of serious offenses and committed

---

[7] Defendant also briefly argues that the reasons the trial court provided for departing from the guidelines are not permissible and that the trial court did not find that these factors were given inadequate weight in calculating the guidelines. On the contrary, the trial court did not base its sentence on one of the prohibited reasons for departure found in MCL 769.34(3). Moreover, because the trial court did not base its departure on reasons already accounted for in calculating defendant's sentence under the guidelines, it was not required to state that its reasons for departure had been given inadequate or disproportionate weight. MCL 769.34(3)(b).

another robbery within a few months of release. The trial court properly determined that a sentence within the guidelines would not be adequate.[8] See *Babcock, supra* at 261-264.

Finally, defendant argues that the trial court did not comply with MCL 769.34(7) because it did not inform him that he had a right to appeal his sentence based on the fact that it was longer or more severe than the appropriate sentence range. The record supports defendant's contention that the trial court did not specifically address defendant's right to appeal on this basis. However, because defendant has appealed his sentence on this basis, the trial court's error was harmless.

Affirmed.

---

[8] In this regard, we note that the trial court's statements and the length of the sentence it imposed reflect the trial court's intent to remove defendant from society for a lengthy period, rather than simply an intent to increase defendant's sentence by a specific amount of time beyond the applicable guidelines range. Thus, the trial court's guidelines scoring error does not require remand for resentencing as we are persuaded the trial court would have rendered the same sentence regardless of the guidelines score. See, e.g. *Babcock, supra* at 260-261 & n 15.