# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

PATRICK ALAN SOURANDER,

       Defendant-Appellant.

UNPUBLISHED
January 25, 2018

No. 332091
Ogemaw Circuit Court
LC No. 14-004450-FC

Before: Hoekstra, P.J., and Meter and K. F. Kelly, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of second-degree murder, MCL 750.317; felon in possession of a firearm, MCL 750.224f; two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1); and felonious assault, MCL 750.82. Defendant was sentenced to serve concurrent prison terms of 36 to 50 years for second-degree murder, 76 months to 30 years for being a felon in possession of a firearm, and 48 months to 15 years for felonious assault. He was also sentenced to two two-year terms for felony-firearm, with one term consecutive to the sentence for murder and one term consecutive to the sentence for felonious assault. We affirm in part, reverse in part, and remand for further proceedings.

The convictions arose from events surrounding the death of Brett Ritter. Defendant claimed that he was outside a bar when he saw a man, Justin Ritter, hitting a woman and that he tried to intervene. He claimed that Brett (Justin's brother) pushed him, that he (defendant) pulled out a gun and pointed it in the air, and that, after he had started walking away from the scene, Brett tried to grab the gun and it accidentally discharged. The prosecution, by contrast, presented evidence that defendant pointed the gun at Justin, Brett told him not to do so and "walked him backward," and defendant raised the gun and shot Brett in the chest after Brett released him.

Defendant asserts that several instances of prosecutorial error occurred during trial. A prosecutor errs by abandoning his or her responsibility to seek justice and, in doing so, denying the defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We evaluate instances of alleged prosecutorial error on a case-by-case basis, reviewing the prosecutor's actions in context. *Id.* at 64.

First, defendant argues that the prosecutor deprived him of his right to cross-examination by arguing facts not in the record about a prior incident. See, e.g., *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994).

The prosecutor argued in her opening statement that witnesses would be testifying that the staff at the bar had had problems with defendant in the past and that the bar's bouncer, Brandon Davison, would testify that defendant's possession of a gun "meant trouble." Davison subsequently testified that he noticed when defendant entered the bar because of past incidents with him. He further indicated that seeing defendant with a gun caused him fear and distress. Thus, defendant's assertion that the prosecutor argued facts not in evidence is without merit. Further, although he did not avail himself of it, defendant had the opportunity to cross-examine Davison about any prior incidents; this countermands defendant's argument that he was denied his right of confrontation with regard to the prosecutor's statements.

Second, defendant argues that the prosecutor erred by impeaching defendant with convictions that were more than 10 years old. When a defendant's prosecutorial-error argument is essentially an evidentiary issue, as is this one, our review is focused on determining whether the prosecutor acted in good faith when seeking to admit the disputed evidence. *Dobek*, 274 Mich App at 70. Here, the prosecutor was acting in good faith when seeking to admit evidence of defendant's 1998 and 1999 convictions. The trial court had ruled that those convictions were not more than 10 years old for the purposes of MRE 609(c), which counts the age of a conviction from defendant's release from confinement. No misconduct occurred. *Dobek*, 274 Mich App at 70.

Third, defendant argues that the prosecutor erred by asking West Branch Police Chief Kenneth Walters to testify about brass knuckles and drug paraphernalia found in defendant's briefcase—evidence that was irrelevant to defendant's charged crimes.

The prosecutor asked Walters about the processing of the van in which defendant left the scene of the shooting. Walters testified that he found telephone pieces and a briefcase in the van, and further testified that the briefcase contained "[d]rug paraphernalia." When asked what the evidentiary value of the items in the briefcase was, Walters responded that there were loaded syringes and "brass knuckles . . . . Those are illegal in the State of Michigan as well." The prosecutor then directed the exchange to the syringes, asking whether Walters had them tested.

Walters's testimony about the brass knuckles was unresponsive and unsolicited, and the prosecutor immediately redirected Walters. Because the prosecutor did not attempt to admit the evidence, defendant has not shown prosecutorial misconduct. See *People v Holly*, 129 Mich App 405, 415; 341 NW2d 823 (1983) ("Generally, a volunteered and unresponsive answer to a proper question is not cause for granting a motion for mistrial.").[1]

---

[1] Further, defendant cannot show that he was prejudiced by the testimony. See *Holly*, 129 Mich App at 415 ("[W]hen an unresponsive remark is made by a police officer, this Court will scrutinize that statement to make sure the officer has not ventured into forbidden areas which

Walters's testimony about the syringes is a different matter because the prosecutor solicited that evidence. The prosecution admits on appeal that the evidence of the syringes was not relevant to any of the crimes for which defendant was charged. However, the prosecution also argues that admission of this evidence was not prejudicial. Whether the improper admission of other-acts evidence is prejudicial depends on the nature of the error in light of the weight and strength of the untainted evidence. *People v Crawford*, 458 Mich 376, 399-400; 582 NW2d 785 (1998), abrogation on other grounds recognized by *People v Knox*, 256 Mich App 175, 189; 662 NW2d 482 (2003), rev'd 469 Mich 502 (2004). The danger of prejudicial use of the evidence is particularly high when the evidence concerns a type of crime similar to that for which the defendant is on trial. *Crawford*, 458 Mich at 398. However, the trial court can minimize the prejudicial effect of improper other-acts evidence if it instructs the jury that the issue at trial is whether the defendant committed the charged offenses, not any uncharged offenses that might stem from the other-acts evidence. *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).

In this case, defendant was charged with murder, assault, and firearms offenses. Because the cited testimony did not concern similar crimes, the possible prejudicial effect was not high. Further, the jury was already aware that defendant had a history of drug offenses because the predicate crime on which his felon-in-possession conviction rested was the delivery of a controlled substance. Additionally, the challenged evidence did not undercut defendant's self-defense and accident defenses.

Additionally, the trial court instructed the jury regarding the use of other-acts evidence. Specifically, the trial court instructed the jury that it had "heard evidence that was introduced to show that the defendant committed a crime or crimes for which he is not on trial . . . ." The court stated, "you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes," and further stated, "[y]ou must not convict the defendant because you think he is guilty of other bad conduct." "It is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), and we see nothing in the record that refutes that presumption.

Fourth, defendant argues that the prosecutor erred by admitting evidence that defendant was on parole at the time of his narcotics conviction. However, because defendant did not, contrary to his statement on appeal, concede the fact of his prior conviction, the prosecutor was required to provide evidence regarding it for purposes of the felon-in-possession charge.[2]

---

may prejudice the defense."). The evidence adduced against defendant was significant, particularly the several eyewitnesses to the shooting. See *id*. (concluding that even though the unresponsive testimony was "especially prejudicial," reversal was not required because "[t]he evidence against him was simply too strong").

[2] In the context of this issue, defendant briefly attempts, without citation to authority, to raise issues about allegedly irrelevant evidence and alleged hearsay. We decline to consider these inadequately-briefed issues.

Fifth, defendant argues that the prosecutor made comments about the danger posed by the contents of the briefcase that made it appear to the jury that defendant was dangerous. Out of the hearing of the jury, the prosecutor requested that the trial court caution the jury about opening the briefcase. The trial court later cautioned the jury that "in the briefcase there may be some . . . syringe hypodermic needles. So if you look in the briefcase, if you ask to have a look in the briefcase, be very, very careful." Because it was not the prosecutor who cautioned the jury, defendant's argument regarding prejudicial remarks lacks a factual basis. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). To the extent that defendant's argument is focused on the prosecutor's *request* for the instruction from the court, we note that the request for a warning about the needles was entirely reasonable.

Finally, defendant argues that the prosecutor impermissibly used defendant's silence against him by questioning defendant's decision not to contact the police after the shooting. The United States Constitution assures that no person "shall be compelled in any criminal case to be a witness against himself." US Const, Am V. However, the prosecution may permissibly use a defendant's prearrest silence for impeachment purposes. *People v Cetlinski*, 435 Mich 742, 746-747; 460 NW2d 534 (1990). Defendant contends that the prosecutor improperly used evidence of defendant's silence as substantive evidence.

The prosecutor argued in closing remarks that after the shooting defendant failed to call or go to the police to report the assault or that he shot someone. We note that defendant testified at trial, and defendant thus *concedes* on appeal that the prosecutor properly elicited, on cross-examination, evidence of defendant's silence for impeachment purposes. Defendant contends, however, that the prosecutor's argument in closing shifted the focus regarding the silence from impeachment to substantive evidence. Defendant simply makes this contention without citation to persuasive authority. It is arguable, however, that the prosecutor was essentially attempting to impeach the credibility of defendant's testimony. Indeed, in *Jenkins v Anderson*, 447 US 231, 235; 100 S Ct 2124; 65 L Ed 2d 86 (1980), the United States Supreme Court noted that "[a]t trial the prosecutor attempted to impeach the petitioner's credibility by suggesting that the petitioner would have spoken out if he had killed in self-defense." (Emphasis added.)[3] While *Cetlinski*, 435 Mich at 763, suggests that the prosecutor's argument in this case may have been improper, we cannot, in light of *Jenkins*, find a "clear or obvious" error with respect to this unpreserved issue. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (discussing the plain-error standard of review). Moreover, even assuming, without deciding, that the prosecutor's argument amounted to an improper attempt to use defendant's omissions as substantive evidence, we find no basis for reversal, given that the silence was indeed admissible, at least for impeachment, and given the other facts in support of guilt that were elicited at trial. The outcome of the case was not likely to have changed had the prosecutor made clear that she was mentioning defendant's silence solely for purposes of impeachment. *Id*. (reversal under plain-error standard requires a showing of prejudice). This issue does not provide a basis for reversal.

---

[3] The *Jenkins* Court concluded that "the use of prearrest silence to impeach a defendant's credibility does not violate the Constitution." *Jenkins*, 447 US at 240.

Defendant next argues that he was not provided effective assistance of counsel at trial. A defendant's ineffective-assistance claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *Id*. When no evidentiary hearing was held, as in this case, this Court's review is limited to mistakes apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To prove that defense counsel was ineffective, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The defendant must also show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 669.

Defendant argues that trial counsel was unprepared for trial as evidenced by counsel's securing several adjournments, that counsel failed to consistently meet with defendant or respond to defendant's requests for evidence, that counsel failed to timely file his witness list or self-defense notice, and that counsel failed to ensure that defendant was receiving his mail.[4]

Counsel has the duty to make reasonable investigations and exercise professional judgment in preparing the defense. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). A failure to meet with a defendant does not constitute ineffective assistance when the record indicates that counsel was prepared for trial. See *Payne*, 285 Mich App at 189. It is clear from the record, which speaks to trial counsel's hiring an investigator, counsel's preparation and argument of motions and responses to motions, and counsel's successfully objecting during trial, that counsel was actively involved in preparing a defense. Additionally, the record indicates that the pretrial adjournments were primarily due to counsel's investigator's need for additional time and resources to investigate additional witnesses, which indicates that counsel was actively involved in preparing for trial. While defendant did raise an issue with receiving his mail, counsel addressed the issue on the record. And while there was some difficulty in having defendant review video recordings of the interior of the bar, the record indicates that this was

---

[4] Defendant mentions that defense counsel did not practice criminal defense. The trial court specifically commented that defense counsel had been involved in a trial before the court "several years ago, [with] multiple defendants," and that counsel was "an experienced attorney" who had "been in a lot of trials[.]" From context it appears that this prior trial was a criminal trial. At any rate, defendant does not make an argument that counsel was ineffective based on his areas of specialty but merely states, in his introduction to the ineffective-assistance issue, that "perhaps the following instances of ineffectiveness can be attributed to lack of experience."

primarily due to a software issue, and by the time of trial defendant had reviewed the recordings and was able to include them in his testimony.[5]

It is not entirely clear from the record whether counsel timely filed the self-defense notice because the trial date kept shifting. Regardless, no prejudice has been shown because defendant was allowed to present his theory of self-defense at trial and the trial court instructed the jury on self-defense. As for filing a witness list, the trial court ordered counsel to file a final witness list by October 12, 2015, and counsel did so. Defendant was able to call all the witnesses that he did not waive.[6]

Defendant alleges that counsel was ineffective for failing to impeach Davison with evidence of prior convictions. Of Davison's prior convictions, only two were even arguably admissible under MRE 609. Moreover, Davison was not one of the people who was allegedly aggressive towards defendant and was not a key witness to the shooting; defense counsel may have reasonably decided that impeaching Davison with his prior convictions would have detracted from the major issues at trial. For the same reasons, it is not reasonably likely that had counsel impeached Davison with his prior convictions, it would have affected the outcome of the trial.

Defendant argues that defense counsel failed to raise timely objections to the prosecutor's use of his prior convictions, to the improper admission of defendant's other crimes, and to other instances of prosecutorial error. These issues, however, are largely meritless, as discussed above. Counsel cannot be deemed ineffective for failing to raise arguments that have no merit. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[7] As for the prosecutor's improper introduction of drug evidence, counsel may have reasonably chosen not to object and draw attention to it because it was cumulative to the properly-admitted evidence of defendant's prior drug crime. And even assuming that counsel should have objected to the arguable use of defendant's silence against him, we cannot conclude that the failure to object affected the outcome of the case. *Vaughn*, 491 Mich at 669.

---

[5] Defendant makes an additional, very brief statement regarding additional witnesses and regarding Brett Ritner's telephone, but he fails to show how an examination of the telephone or the calling of certain additional witnesses would have affected the outcome of the case.

[6] Defendant also asserts that he was completely denied his right to counsel because trial counsel was entirely unprepared for trial. When counsel is completely unprepared for trial, there is a functional denial of counsel under the Sixth Amendment. See *People v Mitchell*, 454 Mich 145, 153-154; 560 NW2d 600 (1997). For the reasons previously stated, trial counsel was a prepared and active advocate. Defendant has not shown that counsel was so deficient that there was a functional denial of counsel under the Sixth Amendment.

[7] Defendant claims that counsel "failed to protect" defendant from the testimony about brass knuckles, but we fail to see how counsel could have anticipated unresponsive testimony, and counsel may have wanted to avoid highlighting the testimony by way of a curative instruction.

While defendant's prior theft convictions should not have been admitted for the reasons discussed later in this opinion, admission of that evidence did not prejudice him because it was cumulative to defendant's admission to taking his girlfriend's gun without her knowledge and, as discussed later in this opinion, was evidence of crimes dissimilar to those for which defendant was standing trial.

Defendant argues that trial counsel failed to challenge the allegedly improper scoring of two of his sentencing-guidelines variables. However, because defendant admits that any improper scoring did not change his guidelines range, defendant cannot show that any possible error prejudiced him.

Defendant raises several arguments pertaining to his request for self-representation and the trial court's decision to grant that request. We review de novo whether a defendant has waived his Sixth Amendment right to be represented by counsel, but we review for clear error the trial court's factual findings regarding a knowing and intelligent waiver. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The United States and Michigan Constitutions provide that an accused is entitled to counsel to assist in his or her defense. US Const, Am 6; Const 1963, Art 1, § 20. But the accused also has a right under the Michigan Constitution to represent himself or herself, Const 1963, art 1, § 13, and the trial court cannot force a lawyer on a defendant who wishes to exercise that right, *Williams*, 470 Mich at 641.

First, defendant argues that the trial court erred by not addressing his requests made at a hearing held on August 19, 2015, for the appointment of substitute counsel or to represent himself. At that hearing, the court, defendant, and defense counsel had the following exchange:

THE COURT. Mr. Jennings [defense counsel]?

MR. JENNINGS. I'm sorry I haven't been able to get there more frequently—

THE DEFENDANT. That's right.

MR. JENNINGS. —but I will make every arrangement to address his—his—what has to be addressed in the upcoming days and weeks, your Honor.

THE COURT. Mr. Soudrander, you don't get to choose your attorney.

THE DEFENDANT. I don't want to choose my attorney. I want to present a complete defense, which I'm allowed.

THE COURT. All right. Sure. Mr.—so you want to see the tapes.

THE DEFENDANT. You can fire an attorney, I'll represent myself. Give me that private investigator, where'd he go? I never even seen his report or the evidence collected.

MR. JENNINGS. We will provide that, your Honor.

THE COURT. Next Tuesday.

MR. JENNINGS. That's fine.

THE DEFENDANT. I think we're all set aren't we.

The trial court then noted that defendant had left the courtroom: "And for the record, he did exit. Just got up and stormed out of the courtroom. And he—this communication with the attorneys on the record without Mr. Sourander present. Mr. Jennings, your client did leave without—just got up and left, is that correct?" Defense counsel responded that that was correct. Defendant did not renew his request for self-representation until the first day of trial, at which time the trial court allowed defendant to represent himself.

Under these circumstances, the fact that the trial court did not fully address defendant's request for substitute counsel at the hearing was an invited error. A party may not appeal an error that the party created. *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010).

Second, defendant argues that the trial court improperly forced him into waiver proceedings when he did not desire to represent himself. Before a trial court may grant a defendant's request for self-representation, it must (1) determine whether the defendant's request is unequivocal; (2) ensure that the defendant's request is knowing, intelligent, and voluntary; and (3) ensure that the defendant's self-representation will not disrupt, burden, or inconvenience the proceedings. *Williams*, 470 Mich at 642. It must also advise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risks of self-representation. *Id*. at 642-643.

A defendant's request for hybrid representation (i.e., a request for standby counsel) does not render the defendant's request for self-representation equivocal. *People v Hicks*, 259 Mich App 518, 528; 675 NW2d 599 (2003). Additionally, a defendant who only states that he or she wants replacement counsel does not unequivocally assert a right to self-representation. *People v Willing*, 267 Mich App 208, 223; 704 NW2d 472 (2005).

After defendant objected to an exhibit at the same time defense counsel said "[n]o objection," the trial court sent the jury to the jury room. Defendant argued that counsel was not advocating effectively on his behalf, stating, "I'm not gonna sit here and just be lynched. I—I tried to fire this attorney; you didn't allow me to." After opining regarding counsel's deficiencies, defendant asked, "Can I confront my accuser myself?" The following exchange took place:

THE COURT. Are you asking to represent yourself?

THE DEFENDANT.  I'm asking to be able to question the witnesses myself after he's done.  If you want him to question them too, he can.  I don't—it's fine.

The trial court sought to determine what defendant was asking for:

THE COURT.  Are you asking to represent yourself or with the assistance of Mr. Jennings?  Are you asking to represent yourself without the assistance of Mr. Jennings?  Or what exactly are you asking?

THE DEFENDANT.  I'm asking for the—or just to be able to question this witness, I think, your Honor.

THE COURT.  So you want to be able to question this witness, Mr. Ritter, but you want Mr. Jennings to continue representing you in other matters in this trial?

THE DEFENDANT.  Um—

THE COURT.  I just need to know if that's what you want.

THE DEFENDANT.  Well—well, I—like I said, I did have some questions for Mr. Walters.  I mean, you know, you understand I keep telling you my attorney doesn't come and see me so I don't know how he's supposed to get these questions. . . .

THE COURT.  Well, Mr. Sourander, . . . you got to tell me what you want.

THE DEFENDANT.  What I would like, your Honor, is to keep the assistance of Mr. Jennings. . . .

* * *

THE COURT.  You want to—you want to represent yourself partially and you want to decide which witnesses you will question?

THE DEFENDANT.  Yes.

After engaging in waiver procedures that will be detailed later in this opinion, the trial court again asked defendant if he wanted to represent himself:

THE COURT.  . . . Are you certain you want to represent yourself?

THE DEFENDANT.  I'm certain I would like to question Justin Ritter.

THE COURT.  Well, . . . that means that if you want to question, you want to represent yourself.

-9-

THE DEFENDANT. Then yes.

The trial court then ascertained that defendant wanted to represent himself in questioning, but wanted to take defense counsel's advice on admitting exhibits, cross-examining witnesses, and delivering closing argument.

The record does not support defendant's argument that the trial court forced him into waiver proceedings for which he had not asked. To the contrary, the trial court took great pains to ascertain what defendant was requesting and then permitted hybrid representation at defendant's request.

We also reject defendant's assertion that the trial court failed to ensure that he understood the dangers of self-representation. The trial court read defendant the charges and possible penalties associated with each. It asked defendant whether he was aware that defense counsel had been to law school and was experienced at trial. The trial court also made sure that defendant was aware that if it allowed defendant to represent himself, it would expect him to behave like a lawyer. The trial court warned defendant that representing himself was not a good idea and asked defendant whether he understood the risks, to which defendant responded, "I understand the risks." The trial court then asked defendant if he understood that he would run a great risk of being convicted by representing himself, and defendant responded that he thought that if he questioned his witnesses it would actually lessen his chance of being convicted.

In sum, the trial court acted conscientiously and methodically in ensuring that defendant was aware of the risks associated with self-representation in a criminal trial. *Hicks*, 259 Mich App at 523.

Defendant argues that the trial court deprived him of the right to counsel by failing to affirm defendant's desire for self-representation at each subsequent hearing. MCR 6.005(E) states that "[i]f a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding . . . need only show that the court advised the defendant of the continuing right to a lawyer's assistance . . . and that the defendant waived that right." Reaffirming the defendant's wavier of counsel at subsequent proceedings is not a constitutional requirement, however. *People v Lane*, 453 Mich 132, 139; 551 NW2d 382 (1996). To warrant reversal, an error in reminding a defendant of the perils of self-representation must have affected the outcome of the case. *Id*. at 140.

The record indicates that after defendant cross-examined Justin Ritter on the first day of trial, defendant did not again act as his own attorney. Instead, defense counsel questioned the witnesses, cross-examined them, objected to evidence, and gave closing arguments. Because defendant did not act as his own attorney after the first day of trial, which was the day on which the trial court warned defendant of the perils of self-representation, it is not reasonably likely that the trial court's failure to warn defendant about the perils of self-representation at subsequent proceedings affected the outcome of defendant's case.

Defendant next argues that the trial court erred by failing to weigh the probative value and prejudicial effect of his old theft convictions before admitting them for impeachment

purposes. Because this assertion of error is unpreserved, we review its merits for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

MRE 609(a) allows a party to impeach a witness's credibility with evidence of a prior conviction if

> (1) the crime contained an element of dishonesty or false statement, or

> (2) the crime contained an element of theft, and

> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

Defendant's theft convictions were not automatically pertinent to defendant's credibility because they did not contain elements of dishonesty or false statement. MRE 609(a)(1). And the trial court failed to determine that defendant's theft convictions were significant to an issue of credibility and that that their probative value outweighed their prejudicial effect. MRE 609(a)(2).

The danger of prejudicial use by a jury of such evidence is particularly high when the evidence is evidence of a similar type of crime to that at issue at trial. *Crawford*, 458 Mich at 398. Further, improperly-admitted evidence may undermine the reliability of a verdict if the case "presented a true one-on-one credibility contest." *People v Snyder (After Remand)*, 301 Mich App 99, 112; 835 NW2d 608 (2013).

This case did not present a one-on-one credibility contest. Instead, several witnesses gave incriminating testimony about defendant's actions on the night of the shooting, even though their accounts were somewhat inconsistent. Additionally, any prejudicial effect from the jury's perceiving defendant as a thief because he had stolen from others in the past was cumulative to the same prejudicial inference from defendant's admission that he took his girlfriend's gun without her knowledge. Further, the evidence was not evidence of a similar type of crime to the crimes for which defendant was on trial. This issue provides no basis for reversal.

Defendant argues that the trial court arbitrarily limited his right to present a defense by limiting which witnesses he could present. The trial court allowed the addition of three witnesses for the defense, despite a lack of proper notice to the prosecution. Defendant argues that the trial court should have allowed more witnesses because defendant stated at the pretrial hearing in question, "There's more witnesses than that." However, defendant has not adequately supported his appellate argument by showing the purported testimony of the potential witnesses and how it would have benefited his case. The trial court acted reasonably by allowing some witnesses despite the lack of notice, and there is no basis for reversal.

Defendant argues that the trial court erred by refusing defense counsel's request to instruct the jury on involuntary manslaughter.[8]  We review de novo questions of law regarding claims of instructional error, including whether an offense is a lesser-included offense of a charged offense and whether an instructional error violated a defendant's due-process rights. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010).  When a defendant requests a jury instruction on a lesser offense, the trial court must provide the instruction if the offense is a necessarily-included lesser offense and the instruction is supported by a rational view of the evidence.  *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527; 664 NW2d 85 (2003).

Binding caselaw is clear that *statutory* involuntary manslaughter[9] is not a necessarily-included lesser offense of second-degree murder because the elements of second-degree murder do not entirely subsume the elements of statutory involuntary manslaughter.  *People v Smith*, 478 Mich 64, 71; 731 NW2d 411 (2007).  Common-law involuntary manslaughter, however, *is* "an inferior offense of murder," and an instruction on this offense is warranted "when a rational view of the evidence would support it."  *Mendoza*, 468 Mich at 548; see also *Smith*, 478 Mich at 73.[10]  It requires a *mens rea* of gross negligence or an intent to injure.  *Smith*, 478 Mich at 74; *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004).  Defendant testified at trial, stating that he pointed a handgun in the air because he feared for his safety during an altercation outside of the bar.  He said that he put the gun in his waistband once he walked past the people in his way, but someone grabbed him and hit him, and he fell to the ground.  Defendant testified that he got up and brought the gun back out and cocked it, Brett Ritter ran towards him and tried to grab the gun, and defendant said, "No, Brett," and pulled the gun away from him.  Defendant insisted that he kept telling Brett to stop but that Brett shoved him.  Defendant said, "At that point, I was raising the pistol up" and "the pistol discharged."  Defendant stated, "I didn't make a conscious decision to fire the pistol.  I don't know what—my finger was on the trigger, but I didn't think, I'm gonna fire the gun at any point."

In *Holtschlag*, 471 Mich at 22, the Court stated that the defendants, "by their purposeful, willful, reckless, and unlawful behavior, unintentionally killed another person, and this is exactly the type of homicide that fits within the parameters of involuntary manslaughter."  In *Mendoza*, which, like the present case, involved an alleged struggle involving a gun, the Court found that a rational view of the evidence in that case did not support an instruction on involuntary manslaughter because the "[d]efendant's statement [did] not indicate that the shot fired during

---

[8] Defendant also argues that his attorney was ineffective for failing to raise the argument again at the close of the proofs.

[9] MCL 750.329(1) provides that "[a] person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter of the wounds, maiming, or injuries result in death."

[10] The prosecutor argued below that common-law voluntary manslaughter is a necessarily-included lesser offense of only first-degree murder, not second-degree murder, but *Mendoza* makes no such distinction.

the struggle struck or killed the victim." *Mendoza*, 468 Mich at 546. Instead, the defendant in that case argued that another person fired the fatal shot. *Id*. at 547-548. Defendant's testimony in the present case, by contrast, is the type of evidence that *Mendoza* contemplated as falling within the parameters of involuntary manslaughter. *Id*. at 546. While defendant did present a theory of self-defense, his testimony, and his counsel during closing argument, also clearly presented a theory of an unintentional shooting during the alleged struggle.[11]

The prosecutor and trial court relied on pre-*Mendoza* caselaw in concluding that an instruction on involuntary manslaughter was not a necessarily-included lesser offense. The court did not even reach the question of a "rational view of the evidence" because it concluded that involuntary manslaughter was not necessarily included. This was erroneous. *Mendoza* is binding upon us and we have no choice but to reverse the conviction for second-degree murder and the felony-firearm conviction tied to that predicate offense. In light of the disputed factual scenario and the all-or-nothing choice presented to the jury, we cannot find harmless error. Cf. *People v Reese*, 242 Mich App 626, 635-636; 619 NW2d 708 (2000). Given that involuntary manslaughter was necessarily included and merely involved a lesser degree of *mens rea* than second-degree murder, *Smith,* 478 Mich at 74, the prosecutor may choose to have the court enter convictions for involuntary manslaughter and felony-firearm or may instead choose to retry defendant on Counts 1 and 3. See, generally, *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001).

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly

---

[11] Also, we note that the trial court found the evidence sufficient to allow a jury instruction regarding an accident. While the jury obviously rejected the accident theory, it was not given the choice to consider the higher *mens rea* tied to common-law involuntary manslaughter.